# EXHIBIT

 LexisNexis·

**User Name:** Lynda Teems
**Date and Time:** Jan 07, 2015    1:49 p.m. CST
**Job Number:** 15916688

## Document(1)

1.  *In re Hamilton, 493 B.R. 31*
    **Client/Matter:** -None-

⚠ Caution
As of: January 7, 2015 2:49 PM EST

## *In re Hamilton*

United States Bankruptcy Court for the Middle District of Tennessee

May 15, 2013, Decided; May 16, 2013, Filed, Entered

Case No. 3:12-bk-04600, Chapter 13, Case No. 3:11-bk-10429, Chapter 13, Case No. 3:12-bk-03021, Chapter 13

**Reporter**
493 B.R. 31; 2013 Bankr. LEXIS 2012; 2013 WL 2151457

In re: H. MICKEY HAMILTON AND MELISSA WILLIS HAMILTON, DEBTORS. IN RE: RISÉ K. HESTER, DEBTOR. IN RE: ORA LEE STARKS, DEBTOR.

## Core Terms

confirmation, funds, cases, distributed, vested, undistributed, commencement of the case, funds held, postpetition, practicable, parties, rights, wages, conversion, earnings, property of the estate, bankruptcy court, bankruptcy case, provides, notice, administrative expense, revest, future earning, entity, orders, undo, post-confirmation, mortgage, convert, retain jurisdiction

## Case Summary

### Procedural Posture

A standing trustee who was appointed to administer bankruptcy plans that had been confirmed in separate Chapter 13 bankruptcy cases asked the court to determine what he was required to do with money he held that had not been distributed to creditors before the cases were dismissed. An association of consumer bankruptcy attorneys and a credit union filed amicus briefs.

### Overview

Debtors filed separate Chapter 13 bankruptcy cases, and in each case the court confirmed a plan the debtor proposed and appointed a trustee to administer the debtor's plan. The trustee collected money from the debtors and held money he had not paid to creditors at the time the debtors asked the court to dismiss their cases, and he asked the court to issue an order regarding the disposition of trust assets he held. The court found that *11 U.S.C.S. § 349(b)(3)* required the trustee to return all funds he held to the debtors after giving parties in interest notice and an opportunity to ask the court to order otherwise. Orders the court issued which confirmed each plan overcame the vesting effect of *11 U.S.C.S. § 1327(b)*, and *§ 349(b)(3)* stated that unless the court, for cause, ordered otherwise, the dismissal of a bankruptcy case, other than under *11 U.S.C.S. § 742*, revested property that was part of a debtor's bankruptcy estate in entities in which such property was vested immediately before the commencement of the case.

### Outcome

The court ordered the trustee to return all funds he held to the debtors after giving parties in interest notice and an opportunity to ask the court to order otherwise.

## LexisNexis® Headnotes

Bankruptcy Law > Conversion & Dismissal > Effects of Dismissal

Lynda Teems

493 B.R. 31, *31; 2013 Bankr. LEXIS 2012, **2012

*HN1* *11 U.S.C.S. § 349(b)(3)* provides that absent court order otherwise, undistributed funds in a bankruptcy case must be returned to the debtor at dismissal of the debtor's case after confirmation.

Bankruptcy Law > ... > Plans > Plan Confirmation > Effects of Confirmation

*HN2* See *11 U.S.C.S. § 1327(b)*.

Bankruptcy Law > Conversion & Dismissal > Effects of Conversion

Bankruptcy Law > Conversion & Dismissal > Individuals With Regular Income

*HN3* There are significant differences between conversion and dismissal of Chapter 13 bankruptcy cases, such that cases resolving the rights of various parties to funds held by a Chapter 13 trustee at the time of conversion offer little guidance on the question of what a trustee must due with funds the trustee holds at the time a Chapter 13 case is dismissed. The consequences of conversion from Chapter 13 to Chapter 7 are dealt with by *11 U.S.C.S. § 348* of the Bankruptcy Code.

Bankruptcy Law > Individuals With Regular Income > Plans > Payments Under Plan

*HN4* Although there is some support in the caselaw for the argument that *11 U.S.C.S. § 1326(a)(2)* and *(c)* require distribution of funds a Chapter 13 trustee holds to creditors in accordance with the debtor's plan if the case is dismissed after the plan is confirmed, there are at least two major problems with this approach. *Section 1326* has nothing to say about payments to a trustee after confirmation and before dismissal. Perhaps more fundamentally, *§ 1326* provides no direction to the trustee in cases that are dismissed after a plan has been confirmed.

Bankruptcy Law > Individuals With Regular Income > Plans > Payments Under Plan

*HN5* See *11 U.S.C.S. § 1326(a)* and *(c)*.

Bankruptcy Law > Individuals With Regular Income > Plans > Payments Under Plan

*HN6* *11 U.S.C.S. § 1326(a)(2)* must be read in context of the entire subsection. *Section 1326(a)(2)* applies only to plan payments that are made prior to confirmation. The first sentence instructs trustees to retain pre-confirmation plan payments until the court confirms a plan or denies confirmation. The next sentence tells the trustee to distribute those pre-confirmation payments in accordance with the plan as soon as he can. The third sentence indicates what a trustee should do with those pre-confirmation payments if a plan is not confirmed. After the trustee distributes those pre-confirmation payments, he or she can now act according to the confirmed plan. For this portion of the bankruptcy case, *§ 1326(c)* instructs the trustee to "make payments to creditors under the plan." *Section 1326(c)* was intended to address only the question of who should act as disbursing agent (the debtor, the trustee, or someone else) of Chapter 13 plan funds. *Section 1326(c)* does not address whether a trustee is required to continue making distributions after the first Chapter 13 case was dismissed. Indeed, none of the provisions of *§ 1326* provide any direction to a trustee when a case is dismissed post-confirmation.

Bankruptcy Law > Conversion & Dismissal > Effects of Dismissal

Bankruptcy Law > Individuals With Regular Income > Plans > Payments Under Plan

*HN7* *11 U.S.C.S. § 1326(a)(2)* applies only to payments paid to a trustee after the commencement of the case but prior to confirmation or denial of confirmation, and is inapplicable to funds paid to the trustee post-confirmation. It is *11 U.S.C.S. § 349(b)(3)* to which courts must turn for direction.

Bankruptcy Law > Individuals With Regular Income > Plans > Payments Under Plan

*HN8* *11 U.S.C.S. § 1326(b)(2)* states that pre-confirmation funds should be distributed in accordance with a Chapter 13 debtor's confirmed plan "as soon as practicable." Some courts have found that *§ 1326(a)(2)* controls the distribution of funds held at dismissal at least to the extent those funds were received by a trustee before confirmation. This reading of

493 B.R. 31, *31; 2013 Bankr. LEXIS 2012, **2012

§ 1326(a)(2) is almost right. Indeed, § 1326(a)(2) addresses only payments received by a trustee before confirmation. But even a payment received before confirmation with respect to which distribution pursuant to the plan was not practicable falls outside the directions of § 1326(a)(2) at dismissal.

Bankruptcy Law > ... > Examiners, Officers & Trustees > Duties & Functions > Individuals With Regular Income

Bankruptcy Law > Individuals With Regular Income > Plans > Payments Under Plan

*HN9* Chapter 13 trustees are forbidden to distribute funds to creditors with claims that have not been allowed because of pending objections. 11 U.S.C.S. §§ 501, 502, and 1326(c). Instead, the trustee typically holds the money intended for that creditor pending resolution of the objection, and holds money at dismissal that could not be paid to creditors under a confirmed plan, practicably or otherwise. 11 U.S.C.S. § 1326(a)(2) has nothing to say about money held by a trustee that could not be distributed in accordance with a confirmed plan—without regard to when that money was received by the trustee. The practicality of distribution before dismissal is the statutory dividing line, not when the funds were received by the trustee.

Bankruptcy Law > Conversion & Dismissal > Individuals With Regular Income

Bankruptcy Law > Individuals With Regular Income > Plans > Payments Under Plan

*HN10* Practicality is a reasonable dividing line in the context of deciding when a Chapter 13 trustee must distribute funds to creditors. Chapter 13 trustees typically distribute funds to allowed creditors once a month. A standing trustee in a district with a large Chapter 13 program may issue tens of thousands of checks each month. Creditors expect distributions on a regular schedule, often on the same day of the month each month. A trustee has no control over the timing of dismissal of cases—dismissal can occur by court order at anytime during the month. Trustees cannot time distributions to manage actions like dismissal within individual cases. For all funds in Chapter 13 cases that cannot practicably be distributed pursuant to a confirmed plan before dismissal, the United States Bankruptcy Court for the Northern District of Illinois ' decision in Williams v. Marshall correctly directs attention to 11 U.S.C.S. § 349(b).

Bankruptcy Law > Conversion & Dismissal > Effects of Dismissal

*HN11* See 11 U.S.C.S. § 349(b).

Bankruptcy Law > Conversion & Dismissal > Effects of Dismissal

*HN12* The scope of 11 U.S.C.S. § 349(b) is broad, and serves to undo a bankruptcy case to the extent possible—to put all parties in the positions they were in before the case was filed. Under § 349(b), a pre-discharge dismissal of a bankruptcy case returns the parties to the positions they were in before the case was initiated. The broad readings are in harmony with Congress's stated intent that the purpose of § 349(b) is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.

Bankruptcy Law > Estate Property > Contents of Estate

Bankruptcy Law > Individuals With Regular Income > Estate Property

*HN13* In a Chapter 13 bankruptcy case, property of the debtor's bankruptcy estate consists of all of the debtor's legal and equitable interests in property and, in addition, all property of the kind specified in 11 U.S.C.S. § 541 that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under Chapter 7, 11, or 12 of the Bankruptcy Code, whichever occurs first. 11 U.S.C.S. §§ 541(a) and 1306(a). Explicitly, property of a Chapter 13 bankruptcy estate includes earnings from services performed by a debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under Chapter 7, 11, or 12 of the Bankruptcy Code, whichever occurs first. 11 U.S.C.S. § 1306(a)(1) and (2).

Bankruptcy Law > Individuals With Regular Income > Estate Property

Bankruptcy Law > Individuals With Regular Income > Plans > General Overview

493 B.R. 31, *31; 2013 Bankr. LEXIS 2012, **2012

*HN14* Future earnings are the fundamental currency of Chapter 13 bankruptcy plans. Postpetition wages ordinarily fund a Chapter 13 plan. Indeed, it is certain that employment is a fundamental aspect of a Chapter 13 case since postpetition earnings constitute the principal means of funding a Chapter 13 plan. Projected disposable income received during the applicable commitment period includes wages and earnings, *11 U.S.C.S. § 1325(b)*, and as set forth in *11 U.S.C.S. § 1326*, wage deductions must begin no later than 30 days after the order for relief or the filing of a plan, whichever is earlier.

Bankruptcy Law > Conversion & Dismissal > Effects of Dismissal

Bankruptcy Law > Conversion & Dismissal > Individuals With Regular Income

Bankruptcy Law > Estate Property > Contents of Estate

Bankruptcy Law > Individuals With Regular Income > Estate Property

*HN15* *11 U.S.C.S. § 349(b)(3)* is not ambiguous. At dismissal—unless a court, for cause, orders otherwise—all postpetition earnings of a debtor vest in the debtor. Earnings from personal services during a Chapter 13 case are defined as property of the debtor's Chapter 13 bankruptcy estate by *11 U.S.C.S. § 1306*. There is no exception to the vesting effect in *§ 349(b)(3)* for earnings held by a trustee at dismissal. *11 U.S.C.S. §§ 541(a)*, *1306(a)*, and *349(b)(3)* comprehensively answer the question of what a Chapter 13 trustee must do with funds the trustee holds after a debtor's plan is confirmed but when the case is dismissed: unless the court orders otherwise, postpetition earnings are property of the debtor's Chapter 13 estate that vest in the debtor at dismissal. No other section of the Bankruptcy Code upsets this outcome.

Bankruptcy Law > Conversion & Dismissal > Effects of Dismissal

Bankruptcy Law > Conversion & Dismissal > Individuals With Regular Income

*HN16* Funds held by a Chapter 13 trustee go to the debtor rather than the debtor's creditors upon the dismissal of the debtor's case. If a debtor had never declared Chapter 13 bankruptcy, they would be entitled to possession of their wages in full, subject to whatever rights their creditors have to reach part of those wages in satisfaction of their claims under applicable nonbankruptcy law and procedure. Thus, giving withheld wages to a debtor on dismissal more nearly produces the situation that would have existed had the debtor never filed Chapter 13 than any other approach. There is certainly no indication that the authors of *11 U.S.C.S. § 349* intended any other result. As pointed out by the United States Court of Appeals for the Ninth Circuit in Nash v. Kester, the revestment language contained in *§ 349(b)(3)*, whereby upon the dismissal of a case property of a debtor's bankruptcy estate is revested in the debtor, naturally lends itself to the conclusion that funds held by a trustee upon dismissal should be returned to the debtor.

Bankruptcy Law > Conversion & Dismissal > Effects of Dismissal

Bankruptcy Law > Conversion & Dismissal > Individuals With Regular Income

Bankruptcy Law > Individuals With Regular Income > Estate Property

*HN17* Some courts have held or suggested that postpetition wages escape the vesting effect in *11 U.S.C.S. § 349(b)(3)* at dismissal of a Chapter 13 bankruptcy case because postpetition wages "did not exist" on the debtor's petition date to become property of the debtor's Chapter 13 estate. Congress trumped this notion decades ago. Without regard to the immaturity of a debtor's interest in future wages that have not been earned, the Bankruptcy Code includes those future earnings in property of a Chapter 13 estate. *11 U.S.C.S. § 1306(a)*. This was a most sensible choice both to provide a plan funding mechanism from future earnings and to protect those future earnings from the anarchy of individual creditor collection actions. *11 U.S.C.S. § 362(a)(1)-(8)*.

Bankruptcy Law > Conversion & Dismissal > Effects of Dismissal

Bankruptcy Law > Conversion & Dismissal > Individuals With Regular Income

Bankruptcy Law > Individuals With Regular Income > Estate Property

*HN18* The argument that state trust law vests rights in creditors to funds not distributed at dismissal, while not without support in the caselaw, runs squarely into *11 U.S.C.S. § 349(b)(3)*. Whatever "trust" features there may be to funds held

493 B.R. 31, *31; 2013 Bankr. LEXIS 2012, **2012

by a Chapter 13 trustee pending distribution under a confirmed plan, federal law directs that those funds vest at dismissal in the only entity that could claim entitlement to those future earnings at the petition—the debtor, whose personal services earn the wages that *11 U.S.C.S. § 1306(a)* captures for the Chapter 13 estate. As the United States Court of Appeals for the Third Circuit observed in In re Michael, no provision of the Bankruptcy Code classifies any property, including postpetition wages, as belonging to creditors. When a debtor transfers funds to a Chapter 13 trustee under a confirmed plan, the funds become part of the debtor's bankruptcy estate, and the debtor retains a vested interest in them. Though creditors have a right to those payments based on a confirmed plan, the debtor does not lose his vested interest until the trustee affirmatively transfers the funds to creditors.

Bankruptcy Law > Conversion & Dismissal > Effects of Dismissal

Bankruptcy Law > Conversion & Dismissal > Individuals With Regular Income

*HN19* While *11 U.S.C.S. § 349(b)* does not expressly provide that confirmation of a Chapter 13 bankruptcy plan is vacated by dismissal, courts have reasonably concluded that dismissal has that effect. To hold otherwise creates a host of knotty problems that evaporate when *§ 349(b)(3)* is fully respected.

Bankruptcy Law > Claims > Objections to Claims

Bankruptcy Law > Individuals With Regular Income > General Overview

*HN20* There is no statute or rule that precisely defines the deadline for claims objections in a Chapter 13 bankruptcy case.

Bankruptcy Law > Conversion & Dismissal > Effects of Dismissal

Bankruptcy Law > Conversion & Dismissal > Individuals With Regular Income

*HN21* Respecting the vesting of undistributed funds in a Chapter 13 debtor at dismissal prevents continued interference with the state law rights of creditors. The distribution scheme worked by a confirmed Chapter 13 plan must follow Bankruptcy Code priorities and protocols—rules that often bear little resemblance to creditors' rights outside of bankruptcy. The legislative history of *11 U.S.C.S. § 349* clearly signals congressional intent that dismissal of a bankruptcy case returns debtors and creditors as much as possible to status quo ante. Vesting undistributed funds at dismissal in a debtor serves this goal by respecting state law.

Bankruptcy Law > Conversion & Dismissal > Effects of Dismissal

Bankruptcy Law > Conversion & Dismissal > Individuals With Regular Income

*HN22* Since, in Chapter 13 bankruptcy cases, postpetition earnings are property of the debtor's bankruptcy estate, the funds held by the trustee revest in the debtor. Thus, *11 U.S.C.S. § 349* seeks to undo the effect of a bankruptcy filing and to place all parties in interest in the same position they were in prior to the bankruptcy filing. If there had been no Chapter 13 case, the property and wages would have been retained by the debtor subject to whatever rights creditors had under state law to satisfy their claims. Thus, upon dismissal of a Chapter 13 case, a creditor has the same rights and state law remedies with regard to the property as existed prior to the filing. In cases where no discharge has been granted, a creditor may enforce its rights against a debtor personally and in rem. It would be inequitable, however, to permit a creditor to enforce its rights by requiring turnover of the funds without requiring adherence to the state law proceedings and protections they would be required to follow in the nonbankruptcy context. Under the Bankruptcy Code, the funds are required to be returned to the debtor, and the debtor may then pay those funds over to his mortgagee.

Bankruptcy Law > Conversion & Dismissal > Effects of Dismissal

Bankruptcy Law > Conversion & Dismissal > Individuals With Regular Income

Bankruptcy Law > Individuals With Regular Income > Eligibility > General Overview

*HN23* Strong, long-standing policies support returning undisbursed funds to a debtor at dismissal after confirmation of a Chapter 13 bankruptcy plan. Chapter 13 is an exclusively voluntary bankruptcy option. Chapter 13 is only available to

493 B.R. 31, *31; 2013 Bankr. LEXIS 2012, **2012

individuals and then only to a subset of individuals with relatively limited amounts of secured and unsecured debts. *11 U.S.C.S. § 109(e)*. Most individuals eligible for Chapter 13 are also eligible for liquidation under Chapter 7. In other words, most Chapter 13 debtors literally volunteer to pay their creditors money they don't have to pay to realize bankruptcy relief. They could file Chapter 7 instead, walk away from all their debts without further payment and keep all future earnings from personal services free of the claims of pre-petition creditors. By filing Chapter 13 instead, these individual debtors are voluntarily paying some or all of their dischargeable debt from future earnings that would otherwise be immune to the claims of their creditors. In *11 U.S.C.S. § 349(b)(3)*, Congress chose not to penalize individual debtors who try and fail in a Chapter 13 case.

> Bankruptcy Law > Conversion & Dismissal > Effects of Dismissal

> Bankruptcy Law > Conversion & Dismissal > Individuals With Regular Income

*HN24* A Chapter 13 debtor may—absent prior conversion—dismiss his or her case at any time. *11 U.S.C.S. § 1307(a)* and *(b)*. Upon dismissal, the debtor has a reasonable expectation that wage deductions will cease and all earnings that have not been distributed to creditors will be returned to the debtor. Any other outcome would dissuade debtors from filing Chapter 13. The United States Court of Appeals for the Third Circuit recognized this disincentive in In re Michael, when it stated that if debtors must take the risk that property acquired during the course of an attempt at repayment will have to be liquidated for the benefit of creditors if Chapter 13 proves unavailing, the incentive to give Chapter 13—which must be voluntary—a try will be greatly diminished. Conversely, when Chapter 13 does prove unavailing, no reason of policy suggests itself why creditors should not be put back in precisely the same position as they would have been had the debtor never sought to repay his debts.

> Bankruptcy Law > Conversion & Dismissal > Effects of Dismissal

> Bankruptcy Law > Conversion & Dismissal > Individuals With Regular Income

*HN25* Returning undistributed funds to a debtor at dismissal of a Chapter 13 bankruptcy case parallels the outcome for Chapter 13 debtors who convert to Chapter 7 in good faith under *11 U.S.C.S. § 348(f)*. When a debtor chooses to dismiss and deal with creditors in the normal course outside of bankruptcy, no stated congressional policy is served to make it less advantageous for the debtor to dismiss than to convert to Chapter 7. The United States Bankruptcy Court for the District of Oregon , in In re Bailey, expressed similar reasoning in the context of dismissal of an unconfirmed case, when it stated that returning funds to a Chapter 13 debtor who dismisses his or her case fosters the policy of encouraging debtors who are financially able to repay their debts to file Chapter 13. It ensures that debtors who attempt Chapter 13 will not be penalized for an unconfirmed attempt, and also ensures the orderly and efficient disposition of Chapter 13 cases. By requiring trustees to return the money to Chapter 13 debtors, Congress ensured that any attempts to reach the money would ensue outside the jurisdiction of the bankruptcy court . Therefore, unconfirmed cases may be closed as quickly as statutorily possible following dismissal. A holding to the contrary would create a "race to the trustee" and effectively ignore the statutory mandate to return the money to the debtor.

> Bankruptcy Law > ... > Retention of Professionals > Compensation > Debtor's Attorney

> Bankruptcy Law > Conversion & Dismissal > Effects of Dismissal

> Bankruptcy Law > Conversion & Dismissal > Individuals With Regular Income

*HN26* There are other, better options to the problem of ensuring that attorneys who represent Chapter 13 debtors are paid when a debtor dismisses his or her case, instead of requiring that a bankruptcy trustee use funds he or she holds to pay the debtor's attorney. One suggested in the caselaw is to provide in a Chapter 13 plan how undistributed funds will be distributed in the event of dismissal after confirmation. Alternatively, counsel will almost always be aware of impending dismissal of a client's case and can seek payment from any undistributed funds by motion under the "for cause" exception to *11 U.S.C.S. § 349(b)*.

> Bankruptcy Law > Conversion & Dismissal > Individuals With Regular Income

> Bankruptcy Law > Individuals With Regular Income > Plans > Payments Under Plan

493 B.R. 31, *31; 2013 Bankr. LEXIS 2012, **2012

Bankruptcy Law > Individuals With Regular Income > Plans > Plan Modification

*HN27* Creditors may avail themselves of several options to increase the likelihood that they will receive payments made by a debtor under a confirmed Chapter 13 plan. (1) If a Chapter 13 trustee is accumulating funds because a creditor is refusing to receive payments under the plan, creditors can move to modify the plan. *11 U.S.C.S. § 1329(a)(1)*. (2) Creditors can move to compel the trustee to make distributions under the plan immediately after a debtor files a motion to convert. (3) *11 U.S.C.S. § 1327(b)* provides that except as otherwise provided in a Chapter 13 bankruptcy plan or an order confirming a plan, the confirmation of a plan vests all of the property of the estate in the debtor. Creditors can object to a proposed plan that does not provide that plan payments vest in creditors immediately on receipt by the Chapter 13 trustee. They likewise can request that similar language be included in a bankruptcy court's order confirming the plan.

Bankruptcy Law > Case Administration > Notice

Bankruptcy Law > ... > Unsecured Priority Claims > Administrative Expenses > General Overview

Bankruptcy Law > Conversion & Dismissal > Effects of Dismissal

Bankruptcy Law > Conversion & Dismissal > Individuals With Regular Income

*HN28* A Chapter 13 debtor's counsel, by virtue of the information available to him due to his role in the debtor's case, is likely to be in a far better position to recognize when a case is likely to be dismissed than a debtor's creditors and therefore is also in a far better position to initiate a request that the court exercise its discretion under *11 U.S.C.S. § 349(b)(3)*. Creditors may have no advance notice that a case is likely to be dismissed. Since some of the creditors may have the right to request the allowance of administrative expenses, it is possible that they should receive notice that they too can seek payment from funds held by a Chapter 13 trustee. On the other hand, nothing prevents any creditor from seeking the allowance of an administrative expense at any time during the pendency of a Chapter 13 case; a creditor need not be aware that a motion to dismiss is pending in order to exercise any rights it may have under *11 U.S.C.S. § 503(b)*. In exercising the discretion afforded to bankruptcy courts under *§ 349(b)(3)*, it more equitable to require that all interested parties be given notice of the potential fund which exists for administrative expenses once the court intervenes to alter the presumptive revesting of estate property. It is also appropriate for such notice to be provided by the first party invoking the court's power under *§ 349(b)(3)*.

Bankruptcy Law > Conversion & Dismissal > Effects of Dismissal

Bankruptcy Law > Procedural Matters > Jurisdiction > General Overview

*HN29* As a general rule, a bankruptcy court lacks jurisdiction over proceedings related to a debtor's bankruptcy after the dismissal of a debtor's petition. As with most rules, exceptions exist. Upon dismissal, *11 U.S.C.S. § 349(b)(3)* provides that ownership of estate property shall be vested in the entity that held the property immediately prior to the commencement of the case. The automatic vesting occurs automatically unless, consistent with *§ 349(b)*, a bankruptcy court "for cause, orders otherwise." By ordering otherwise, a bankruptcy court may therefore retain jurisdiction over the administration of a debtor's estate subsequent to the dismissal of a debtor's petition. Therefore, the lynchpin of whether a court retains jurisdiction pursuant to the *§ 349(b)* exception is whether a bankruptcy court issued an order prior to or concurrent with dismissal providing for it to retain jurisdiction over the administration of a debtor's estate.

Bankruptcy Law > Conversion & Dismissal > Effects of Dismissal

Bankruptcy Law > Procedural Matters > Jurisdiction > General Overview

*HN30* A bankruptcy court has the ability under *11 U.S.C.S. § 349* to retain jurisdiction over the administration of a debtor's bankruptcy estate in its dismissal order, if it finds cause to do so. Where a court does not explicitly retain such jurisdiction, the court thereafter presumptively lacks jurisdiction over the issue. Courts are able to invoke ancillary jurisdiction post-dismissal to interpret and effectuate previous decrees.

Bankruptcy Law > Conversion & Dismissal > Effects of Dismissal

493 B.R. 31, *31; 2013 Bankr. LEXIS 2012, **2012

*HN31* Exercising the discretion afforded under *11 U.S.C.S. § 349(b)(3)* requires that all interested parties be given notice of the potential fund which exists once the court intervenes to alter the presumptive revesting of estate property. Defining "all interested parties" may be complicated in some cases.

Bankruptcy Law > Conversion & Dismissal > Effects of Dismissal

Bankruptcy Law > Conversion & Dismissal > Individuals With Regular Income

*HN32* At dismissal after confirmation of a Chapter 13 bankruptcy plan, *11 U.S.C.S. § 349(b)(3)* controls and undistributed funds held by the trustee must be returned to the debtor. Bankruptcy courts have statutory discretion to order otherwise. To properly exercise that discretion, notice must be given to all parties in interest with opportunity to demonstrate cause for an outcome other than return of all funds to the debtor.

**Counsel:** [**1] Henry E. Hildebrand, III, Nashville, TN.

Maximilian R. Loosen, Puryear Law Group, Nashville, TN, Counsel for Southeast Financial Credit Union.

Rabin Price Nimmo, Nimmo Hoehn Kirt and Partin, Nashville, TN, Attorney for Risée Hester.

Gray Waldron, Rothschild & Ausbrooks, PLLC, Nashville, TN, Attorney for Interested Parties.

Courtney H. Gilmer, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Nashville, TN, Attorneys for Ocwen Loan Servicing, LLC.

Beth Roberts Derrick, Assistant U.S. Trustee, Office of the U.S. Trustee, Nashville, TN.

**Judges:** THE HONORABLE KEITH M. LUNDIN, CHIEF UNITED STATES BANKRUPTCY JUDGE.

**Opinion by:** KEITH M. LUNDIN

# Opinion

[*32] MEMORANDUM

The issue in these Chapter 13 cases is: What happens at dismissal to funds held by the trustee in a confirmed Chapter 13 case? *HN1* *11 U.S.C. § 349(b)(3)* provides the answer: Absent court order otherwise, undistributed funds must be returned to the debtor at dismissal after confirmation. The following are findings of fact and conclusions of law. *FED. R. BANKR. P. 7052*.

I. FACTS

There are no disputed facts. [1] These debtors confirmed Chapter 13 plans during 2012. The plan and/or order confirming the plan in each case overcame the vesting effect in *11 U.S.C. § 1327(b)* [2] by providing [*33]   [**2] that all property remained property of the estate until conversion, dismissal or discharge.

---

[1]  The parties stipulated that all facts presented by the trustee were accurate and that no additional proof was necessary. Mentioned below, there is a hole in the stipulated facts that is not outcome determinative.

[2]  *11 U.S.C. § 1327(b)* states:

*HN2* (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

493 B.R. 31, *33; 2013 Bankr. LEXIS 2012, **2

After confirmation, each of these debtors failed to fully fund their plans resulting in orders of dismissal. At dismissal, the Chapter 13 trustee held undistributed funds in each case, ranging from $2789 to $12,975. A disputed mortgage claim caused a large portion of the undistributed funds in each case—distributions were being held by the trustee pending resolution of the claims objections.

The standing Chapter 13 trustee filed an Application for Instruction Regarding Disposition of Trust Assets in each case. The trustee took no position in these Applications. When pressed at oral argument, the trustee observed that "general principles of trust law" support distribution pursuant to the confirmed plan [**3] of any sum held at dismissal. The trustee explained that payments made into plans from debtors' postpetition earnings were the trust *res* impressed with the conditions in confirmation orders that would require him to distribute funds on hand at dismissal consistent with the confirmed plans. The trustee cited *In re Parrish, 275 B.R. 424 (Bankr. D.D.C. 2002)*, to support this outcome. *Parrish* holds that *11 U.S.C. § 1326(a)(2)* requires distribution under the plan of funds held by the trustee at dismissal. If persuaded to this position, the court is then invited by the trustee to consider how the pending claims objections will be resolved in these now dismissed Chapter 13 cases.

The law firm of Rothschild & Ausbrooks, PLLC, was granted leave to file an amicus brief on behalf of The Middle Tennessee Association of Consumer Bankruptcy Attorneys ("MACBA"). Southeast Financial Credit Union appeared as well. These additional briefs were helpful.

MACBA argued that undistributed funds held at dismissal in a confirmed Chapter 13 case should be returned to the debtor after deducting any unpaid costs of administration allowed under *11 U.S.C. § 503(b)*. [3] MACBA asserts that access to legal counsel for [**4] Chapter 13 debtors would be severely impaired if attorneys don't get paid in dismissed cases. MACBA explains that most Chapter 13 debtors enter bankruptcy having paid no attorney fees up front—counsel agrees to accept payments under the plan. To assure availability of counsel for Chapter 13 debtors, MACBA urges "a procedure whereby, upon dismissal of a Chapter 13 Plan, the Trustee routinely pays all claims allowed under *Section 503(b)* and distributes the balance to the Debtor, 'unless the Court, for cause, otherwise directs' based upon the unique equities of the case." (Amicus Br. at 3.).

MACBA invokes the opening phrase in *11 U.S.C. § 349(b)(3)*—"[u]nless the court, for cause, orders otherwise"—as authority for its general rule of payment of attorney fees in Chapter 13 cases dismissed after confirmation. In this way, treatment of fees post confirmation would mirror treatment of undistributed funds in cases dismissed prior to confirmation under *§ 1326(b)(2)*.

Southeast Financial Credit Union ("Southeast"), self-described [**5] as a consumer lender, often holds secured (home mortgages, automobile loans) and/or unsecured (credit card debt) claims in Chapter 13 cases. Southeast argues that funds held by the Chapter 13 trustee at dismissal of a confirmed case should be distributed in accordance with the confirmed plan. [*34] Southeast cites *11 U.S.C. §§ 1326(a)(2)*, *(b)(1)-(2)* & *(c)* and *1306(b)*, for this conclusion. If there are objections to claims pending at dismissal, Southeast urges the court to hear and decide those claim objections prior to any final distribution and notwithstanding dismissal of the underlying case.

## II. Discussion

The *only* issue in these cases is the disposition of undistributed funds held by the Chapter 13 trustee at *dismissal* of a *confirmed* Chapter 13 case. [4] There is less controversy with respect to disposition of undistributed funds at conversion to another chapter or at dismissal *prior to confirmation*. [5] With respect to confirmed cases, precedent is split. [6]

---

[3]   Attorney fees are among the administrative expenses contemplated by *11 U.S.C. § 503(b)(3)* ("compensation and reimbursement awarded under *section 330(a)* of this title").

[4]   *See, In re Slaughter, 141 B.R. 661, 662-63 (Bankr. N.D. Ill. 1992)* (*HN3* "[T]here are . . . significant differences between conversion and dismissal such that cases resolving the respective rights of various parties to funds held by the Chapter [**6] 13 trustee at the time of conversion offer little guidance . . . . The consequences of conversion from Chapter 13 to Chapter 7 are dealt with by *§ 348 of the*

493 B.R. 31, *34; 2013 Bankr. LEXIS 2012, **6

A. *11 U.S.C. § 1326.*

**HN4** Southeast argues that the "plain language" of *11 U.S.C. § 1326(a)(2)* and *(c)* requires distribution to creditors in accordance with the plan at dismissal after confirmation. This position has some support [*35] in the case law. [7]

There are at least two major problems with this approach. *Section 1326* has nothing to say about payments to the trustee after confirmation and before dismissal. Perhaps more fundamentally, *§ 1326* provides no direction to the trustee in cases such as these that are dismissed after a plan has been confirmed.

*Section 1326* provides:

**HN5** (a)(1) Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever [**10] is earlier, in the amount —

(A) proposed by the plan to the trustee;

---

Bankruptcy Code. The instant dispute arises because the debtors chose to dismiss their Chapter 13 case rather than convert it to a Chapter 7 case. Accordingly, this court will look to § 349 of the Bankruptcy Code rather than § 348 for guidance.").

[5]  *See, e.g., Williams v. IMC Mortg. Co. (In re Williams)*, 246 B.R. 591, 596-97 (B.A.P. 8th Cir. 1999) (per curiam) (In Chapter 13 case dismissed prior to confirmation of plan, consistent with 11 U.S.C. § 1326(a)(2), "dismissal order directed the trustee to pay claims 'as allowed under section 503(b) . . . and then he is to return any remaining funds to the debtor.'"); *In re Sexton*, 397 B.R. 375 (Bankr. M.D. Tenn. 2008) (Chief Judge George Paine applied 11 U.S.C. § 1326(a)(2) to authorize the Chapter 13 trustee to return funds to debtors in a Chapter 13 case dismissed before confirmation.); *In re Inyamah*, 378 B.R. 183 (Bankr. S.D. Ohio 2007) (When Chapter 13 case is dismissed prior to confirmation, § 1326(a)(2) requires the return of funds to debtor, minus adequate protection payments [**7] and administrative claims; creditor's service of nonwage garnishment on trustee would not be honored); *In re Bailey*, 330 B.R. 775 (Bankr. D. Or. 2005); *In re Oliver*, 222 B.R. 272 (Bankr. E.D. Va. 1998) ("Reading sections 1326(a)(2), 503(b)(2), and 330(a)(4)(B) together, we conclude that the debtor's attorney's fees and expenses are administrative expenses which are properly payable by the Trustee prior to the return of remaining funds to the debtor pursuant to section 1326(a)(2)."); *In re Walter*, 199 B.R. 390 (Bankr. C.D. Ill. 1996) ("By its clearly expressed terms, § 1326(a)(2) directs the Chapter 13 trustee to return post-petition payments to the debtor if the plan is not confirmed. The statute provides one exception to this general rule, which permits the trustee to deduct and pay any administrative expense claims arising under § 503(b). It does not appear to this Court that a literal application of § 1326(a)(2) defeats the purpose of the Bankruptcy Code generally, or of Chapter 13 specifically. The Bankruptcy Code reflects a congressional intent to make attractive and thus, encourage filing of voluntary Chapter 13 petitions."); *Smith v. Strickland*, 178 B.R. 524 (M.D. Fla. 1995).

[6]  Funds [**8] returned to debtor: *Nash v. Kester (In re Nash)*, 765 F.2d 1410 (9th Cir. 1985); *Cohen v. Tran (In re Tran)*, 309 B.R. 330 (B.A.P. 9th Cir. 2004), *aff'd*, 177 F. App'x 754 (9th Cir. 2006); *Williams v. Marshall (In re Williams)*, 488 B.R. 380, 385-86 (Bankr. N.D. Ill. 2013); *In re Majkowski*, No. 07-bk-199, 2011 Bankr. LEXIS 2511, 2011 WL 2652386 (Bankr. N.D. W.Va. July 6, 2011); *In re Parker*, 400 B.R. 55 (Bankr. E.D. Pa. 2009); *In re Torres*, No. 99-02609, 2000 WL 1515170 (Bankr. D. Idaho Oct. 10, 2000); *In re Slaughter*, 141 B.R. 661 (Bankr. N.D. Ill 1992); *In re Boggs*, 137 B.R. 408 (Bankr. W.D. Wash. 1992).

Funds distributed pursuant to plan: *In re Parrish*, 275 B.R. 424 (Bankr. D. D.C. 2002); *In re Darden*, 474 B.R. 1 (Bankr. D. Mass. 2012) (collecting cases).

[7]  *See, e.g., In re Parrish*, 275 B.R. at 425. *Parrish* concluded that "§ 1326(b)(2) obligates the chapter 13 trustee to disburse funds that she held at the moment of dismissal of the case in accordance with the terms of the [**9] plan." *Id*. At the time *Parrish* was decided, § 1326(a) was somewhat less explicit:

(1) Unless the court orders otherwise, the debtor shall commence making the payments proposed by a plan within 30 days after the plan is filed.

(2) A payment made under this subsection shall be retained by the trustee until confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as practicable. If a plan is not confirmed, the trustee shall return any such payment to the debtor, after deducting any unpaid claim allowed under section 503(b) of this title.

11 U.S.C. § 1326(a) (prior to 2005 BAPCPA amendments).

493 B.R. 31, *35; 2013 Bankr. LEXIS 2012, **10

(B) scheduled in a lease of personal property directly to the lessor for that portion of the obligation that becomes due after the order for relief, reducing the payments under subparagraph (A) by the amount so paid and providing the trustee with evidence of such payments, including the amount and date of payment; and

(C) that provides adequate protection directly to a creditor holding an allowed claim secured by personal property to the extent the claim is attributable to the purchase of such property by the debtor for that portion of the obligation that becomes due after the order for relief, reducing the payments under subparagraph (A) by the amount so paid and providing the trustee with evidence of such payment, including the amount and the date of payment.

(2) A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. *If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable.* If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing [**11] to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under *section 503(b)*.

* * * *

(c) Except as otherwise provided in the plan or the order confirming the plan, the trustee shall make payments to creditors under the plan.

*11 U.S.C. § 1326* (emphasis added).

**HN6** *Section 1326(a)(2)* must be read in context of the entire subsection. *See, e.g., Massachusetts v. Pappalardo (In re Steenstra), 307 B.R. 732, 737 (B.A.P. 1st Cir. 2004)* ( "To begin our analysis, we find that *§ 1326(a)(2)* cannot be read alone . . . ."). As Bankruptcy Judge Hollis recently explained:

This subsection applies only to plan payments made *prior* to confirmation. The first sentence instructs trustees to retain [*36] pre-confirmation plan payments until the court confirms a plan or denies confirmation. The next sentence tells the trustee, 'now distribute those pre-confirmation payments in accordance with the plan as soon as you can.' The third sentence indicates what a trustee should do with those pre-confirmation payments if a plan is not confirmed.

After the trustee distributes those pre-confirmation payments, he or she can now act according to the confirmed plan. For this portion of the bankruptcy [**12] case, *section 1326(c)* instructs the trustee to "make payments to creditors under the plan." As [*Nash v. Kester (In re Nash), 765 F.2d 1410 (9th Cir. 1985)*] clarified, this section (previously 1326(b)) "was intended to address only the question of who should act as disbursing agent (debtor, trustee, or someone else) of Chapter 13 plan funds. *Section 1326(b)* [now (c)] does not address whether the Trustee was required to continue making distributions after the first Chapter 13 case was dismissed."

Indeed, none of the provisions of *§ 1326* provide any direction to the trustee when a case is dismissed post-confirmation. **HN7** *"[Section] 1326(a)(2)* applies only to payments paid to the trustee after the commencement of the case but prior to confirmation or denial of confirmation, and is inapplicable to funds paid to the trustee post-confirmation [. . . .]" It is *section 349(b)(3)* to which we must turn for direction.

*Williams v. Marshall (In re Williams), 488 B.R. 380, 385-86 (Bankr. N.D. Ill. 2013)* (internal citations omitted). *See also In re Tran, 309 B.R. at 335* ("In our view, *§ 1326(a)(2)* was not intended to address the disposition of funds received by a chapter 13 trustee after confirmation"), [**13] *aff'd without op., 177 F. App'x 754 (9th Cir. 2006)*; *In re Majkowski, No. 07-bk-199, 2011 Bankr. LEXIS 2511, 2011 WL 2652386, *1 (Bankr. N.D. W.Va. July 6, 2011)* ("the better reasoned view is that *§ 1326(a)(2)*, by its very terms, is inapplicable to funds paid to the trustee post-confirmation but not disbursed pursuant to the confirmed plan at the time of dismissal"); *In re Parker, 400 B.R. 55, 62 (Bankr. E.D. Pa. 2009)* ("[F]unds received and retained by the trustee prior to confirmation are directed . . . by *section 1326(a)(2)* to be paid 'in accordance with the plan as soon as is practicable.' Such retained funds are distinguishable from funds received by the trustee postconfirmation."); *In re Boggs, 137 B.R. 408, 410 (Bankr. W.D. Wash.1992)* ("By its terms, *§ 1326(a)(2)* does not pertain to funds received

493 B.R. 31, *36; 2013 Bankr. LEXIS 2012, **13

by a trustee *after* confirmation of a Chapter 13 plan."); *In re Michael, 436 B.R. 323, 327 (Bankr. M.D. Pa. 2010)* (in a post confirmation conversion case, *§ 1326(a)(2)* does not address "the disposition of plan payments made post-confirmation"), *aff'd, 446 B.R. 665, 667—68 (M.D. Pa. 2011), aff'd, 699 F.3d 305 (3d Cir. 2012).*

It is not clear from the trustee's Applications or from the stipulated facts whether any [**14] portion of the funds held in these cases was collected prior to confirmation. *HN8 Section 1326(b)(2)* states that preconfirmation funds should be distributed in accordance with the confirmed plan "as soon as practicable." Some courts have found that *§ 1326(a)(2)* controls the distribution of funds held at dismissal at least to the extent those funds were received by the trustee before confirmation. *See, e.g., In re Michael, 699 F.3d 305, 314 (3d Cir. 2012); In re Majkowski, No. 07-bk-199, 2011 Bankr. LEXIS 2511, 2011 WL 2652386, at *2 (Bankr. N.D. W.Va. July 6, 2011)* ("*§ 1326(a)(2)* applies only to payments paid to the trustee after the commencement of the case but prior to confirmation or denial of confirmation"). This reading of *§ 1326(a)(2)* is almost right. Indeed, *§ 1326(a)(2)* addresses only payments received by the trustee before [*37] confirmation. But even a payment received before confirmation with respect to which distribution pursuant to the plan was *not* practicable falls outside the directions of *§ 1326(a)(2)* at dismissal.

No party in these cases disputes that it was *not* practicable for the trustee to distribute all funds on hand before these debtors dismissed their Chapter 13 cases. A substantial portion of [**15] the funds on hand at dismissal in each of these cases was held by the trustee because there were unresolved claims objections. *HN9* Chapter 13 trustees are forbidden to distribute funds to creditors with claims that have not been allowed because of pending objections. *See 11 U.S.C. §§ 501, 502 & 1326(c)* ; *see, e.g., In re Dumain, No. 11-37183, 492 B.R. 140, 2013 Bankr. LEXIS 1906, 2013 WL 1890256, at *2 (Bankr. S.D.N.Y. May 8, 2012)* ("*Section 501* provides that '[a] creditor or an indenture trustee may file a proof of claim.' *Section 502* states that '[a] claim or interest, proof of which is filed under *section 501* of this title, is deemed allowed, unless a party in interest ... objects.' . . . *Section 1326(c)* requires the chapter 13 trustee to make plan distributions to creditors under the plan. The trustee can only make those distributions on account of allowed claims. *FED. R. BANKR.P. 3021* ('after a plan is confirmed, distribution shall be made to creditors whose claims have been allowed....')"). Instead, the trustee typically holds the money intended for that creditor pending resolution of the objection, and just what happened here happens—the trustee holds money at dismissal that could not be paid to creditors under the confirmed [**16] plan, practicably or otherwise. *Section 1326(a)(2)* has nothing to say about the money held by the trustee that could not be distributed in accordance with the confirmed plan—without regard to when that money was received by the trustee. The practicality of distribution before dismissal is the statutory dividing line, not when the funds were received by the trustee.

*HN10* Practicality is a reasonable dividing line in this context. Chapter 13 trustees typically distribute funds to allowed creditors once a month. A standing trustee in a district with a large Chapter 13 program may issue tens of thousands of checks each month. Creditors expect distributions on a regular schedule, often on the same day of the month each month. The trustee has no control over the timing of dismissal of cases — dismissal can occur by court order at anytime during the month. Trustees cannot time distributions to manage actions like dismissal within individual cases.

For all funds in these cases that could not practicably be distributed pursuant to the confirmed plans before dismissal, *Williams* correctly directs attention to *§ 349(b)*.

**B.** *11 U.S.C. § 349(b)*

*Subsection (b) of § 349*— aptly entitled "Effect of dismissal"—provides:

*HN11* (b) [**17] Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—

(1) reinstates—

(A) any proceeding or custodianship superseded under section 543 of this title;

(B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and

(C) any lien voided under section 506(d) of this title;

493 B.R. 31, *37; 2013 Bankr. LEXIS 2012, **17

(2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and

[*38]   (3) *revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.*

*11 U.S.C. § 349(b)* (emphasis added).

HN12 The scope of *§ 349(b)* is broad, and serves to undo the bankruptcy case to the extent possible—to put all parties in the positions they were in before the case was filed. S. Rep. No. 95-989, 49, reprinted in 1978 U.S.C.C.A.N. 5787, 5835 ("the basic purpose of *[section 349(b)]* is to undo the bankruptcy case, as far as is practicable, and to restore all property rights to the position in which there were found at the commencement of the case").

"Under *11 U.S.C. § 349(b)*, [**18] 'the pre-discharge dismissal of a bankruptcy case returns the parties to the positions they were in before the case was initiated." *In re Sanitate, 415 B.R. 98, 104 (Bankr. E.D. Pa.2009)*. . . . "[The] broad readings are in harmony with Congress' stated intent that the purpose of this section is to 'undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.' " *[Sanitate], 415 B.R. at 105* (quoting S. Rep. No. 989, 95th Cong., 2d Sess. 48—49, 1978 U.S.C.C.A.N. 5787, 5835 (1978)). . . . [S]ince the Bankruptcy Court dismissed Debtor's bankruptcy plan without granting a discharge, the court's acceptance of that plan was negated and the parties were no longer bound by its terms.

*Wells Fargo Bank, N.A. v. Oparaji (In re Oparaji), 698 F.3d 231, 238 (5th Cir. 2012)*. See also *In re Nash, 765 F.2d at 1414* ("[A] Chapter 13 dismissal 'revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.' The legislative history of *§ 349(b)* states that '[t]he basic purpose of the subsection is to undo the bankruptcy case, [**19] as far as possible, and to restore all property rights to the position in which they were found at the commencement of the case.' We have previously stated that *§ 349* 'obviously contemplates that on dismissal a bankrupt is reinvested with the estate, subject to all encumbrances which existed prior to the bankruptcy.'") (internal citations omitted); *In re Williams, 246 B.R. at 596* ("[S]ection 349 seeks to undo the effect of the bankruptcy filing and to place all parties in interest in the same position they were in prior to the bankruptcy filing."); *In re Wcislak, 446 B.R. 827, 829 (Bankr. N.D. Ohio 2011)* ("§ 349 seeks, 'to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.'") (citing *In re Plata, 958 F.2d 918, 923 (9th Cir. 1992)* (citing S. Rep. No. 989, 95th Cong., 2d Sess. 49,(1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5835))); *In re Slaughter, 141 B.R. at 663—64* ("[Section] 349, seeks to undo the bankruptcy upon dismissal and make it seem, insofar as possible, as if there had never been a Chapter 13 case.").

HN13 In a Chapter 13 case, property of the bankruptcy estate consists [**20] of all of the debtor's legal and equitable interests in property and "in addition . . . all property of the kind specified in . . . *section [541]* that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first". *11 U.S.C. §§ 541(a)* and *1306(a)*. Explicitly, property of the Chapter 13 estate includes "earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or [*39] 12 of this title, whichever occurs first." *11 U.S.C. § 1306(a)(1)* & *(2)*.

HN14 Future earnings are the fundamental currency of Chapter 13 plans. Postpetition wages ordinarily fund the Chapter 13 plan. Indeed, "it is certain that employment is a fundamental aspect of a Chapter 13 case since postpetition earnings constitute the principal means of funding the Chapter 13 payment plan." *Walker v. Delta Air Lines, Inc., No. Civ. A. 100CV0558-TWT, 2002 U.S. Dist. LEXIS 28295, 2002 WL 32136202, *6 (N.D. Ga. Aug. 1, 2002)*, aff'd without op., *66 F. App'x 846 (11th Cir. 2003)*. See also *11 U.S.C. § 1322(a)(1)* ("The plan shall provide for the [**21] submission of all or such portion of future earnings . . . of the debtor to the supervision and control of the trustee as in necessary for the execution of the plan."). Projected disposable income received during the applicable commitment period includes wages and earnings. See *11 U.S.C. § 1325(b)*. And, as set forth in *§ 1326*, wage deductions must begin no later than 30 days after the order for relief or the filing of a plan, whichever is earlier.

Lynda Teems

493 B.R. 31, *39; 2013 Bankr. LEXIS 2012, **21

*HN15* _Section 349(b)(3)_ is not ambiguous: At dismissal—unless the court, for cause, orders otherwise—all postpetition earnings of the debtor vest in the debtor. Earnings from personal services during the Chapter 13 case are defined as property of the Chapter 13 estate by _§ 1306_. There is no exception to the vesting effect in _§ 349(b)(3)_ for earnings held by the trustee at dismissal. _Sections 541(a)_, _1306(a)_ and _349(b)(3)_ comprehensively answer the question in this case: Unless the court orders otherwise, postpetition earnings are property of the Chapter 13 estate that vest in the debtor at dismissal. No other section of the Bankruptcy Code upsets this outcome. As explained by Judge Ginsburg in _Slaughter_:

> *HN16* [F]unds held by the trustee go to the debtors [**22] rather than their creditors upon the dismissal of their Chapter 13 case. If the debtors had never filed Chapter 13, they would be entitled to possession of their wages in full, subject to whatever rights their creditors have to reach part of those wages in satisfaction of their claims under applicable nonbankruptcy law and procedure. Thus, giving the withheld wages to the debtors on dismissal more nearly produces the situation that would have existed had the debtors never filed Chapter 13 than any other approach. There is certainly no indication that the authors of _§ 349_ intended any other result. This court holds that pursuant to _§ 349(b) of the Bankruptcy Code_ and _Nash_, the debtor is entitled to receive the [undistributed funds] from the trustee.

_In re Slaughter, 141 B.R. at 663-64_ (internal citations and footnotes omitted) (applying pre-BAPCPA version of _§ 349_). _See also In re Williams, 488 B.R. at 386-87_ (following _Slaughter_); _In re Hufford, 460 B.R. 172, 177 (Bankr. N.D. Ohio 2011)_ ("[I]n a Chapter 13 case, property of the estate will include postpetition wages earned by a debtor. _11 U.S.C. § 1306(a)(2)_. Consequently, as pointed out by the court in _In re Nash_, the [re-]vestment [**23] language contained in _§ 349(b)(3)_, whereby upon the dismissal of a case property of the estate is revested in the debtor, naturally lends itself to the conclusion that funds held by a trustee upon dismissal should be returned to the debtor.").

*HN17* Some courts have held or suggested that postpetition wages escape the vesting effect in _§ 349(b)(3)_ at dismissal because postpetition wages "did not exist" at the petition to become property of the Chapter 13 estate. _See In re Lewis, 346 B.R. 89, 107 (Bankr. E.D. Pa. 2006)_ ("While such funds constitute property of the estate, . . . , the plan payments are derived from [*40] postpetition earnings of the debtor, not prepetition assets. Since the funds did not exist as of the commencement of the case (although once in existence, the funds became property of the estate by virtue of _11 U.S.C. § 1306(a)(2)_), it is difficult to conceptualize how the funds can revest 'in the entity in which they [were] vested immediately before the commencement of the case,' as _§ 349(b)(3)_ directs. In other words, if the property did not exist prepetition, how can it "revest" in the entity in which it was vested prepetition?"); _In re Shields, 431 B.R. 446, 450 (Bankr. S.D. Inc., 2012)_ [**24] (citing _Lewis_); _see also In re Darden, 474 B.R. at 12_ (Postpetition settlement proceeds "are property of the estate that, upon dismissal of the case, revest 'in the entity in which such property was vested immediately before the commencement of the case' . . . . Even if the proceeds were subject to this provision (notwithstanding that neither they, nor the cause of action that gave rise to them, existed before the commencement of the case) and the Debtor were deemed the entity in which such property was vested immediately before the commencement of the case, cause would and does exist to 'order otherwise.'"). Congress trumped this notion decades ago. Without regard to the immaturity of the debtor's interest in future wages that have not been earned, the Bankruptcy Code includes those future earnings in property of the Chapter 13 estate. _11 U.S.C. § 1306(a)_ (quoted above). This was a most sensible choice both to provide a plan funding mechanism from future earnings and to protect those future earnings from the anarchy of individual creditor collection actions. _See 11 U.S.C. § 362(a)(1)-(8)_.

*HN18* The Chapter 13 trustee argues that state trust law vests rights in creditors to funds not distributed [**25] at dismissal. While not without support in the case law, [8] this argument runs squarely into _§ 349(b)(3)_. Whatever "trust" features there may be to funds held by the Chapter 13 trustee pending distribution under a confirmed plan, federal law directs that those funds vest at dismissal in the only entity that could claim entitlement to those future earnings at the petition—the debtors

---

[8]   _See, e.g._, _In re Galloway, 134 B.R. 602, 603 (Bankr. W.D. Ky. 1991)_ (When a debtor "voluntarily part[s] with wages and deliver[s] them to the custody of a trustee in performance of a confirmed Chapter 13 plan, the creditors have a vested right to receive those payments pursuant to the plan"); _Waugh v. Saldamarco (In re Waugh), 82 B.R. 394, 400 (Bankr. W.D. Pa. 1988)_ ("Shall" in _§ 1326(a)(2)_ "creates the condition of a trust. Creditors have the right to the funds in an active confirmed chapter 13 plan on payment by the debtor"); _In re Rutenbeck, 78 B.R. 912, 913 (Bankr. E.D. Wis. 1987)_ ("[T]he undistributed funds ought to be treated as trust funds for the *benefit* of the creditors under the confirmed plan and distributed to those creditors in accordance with the terms of the plan."); _In re Lennon,_

493 B.R. 31, *40; 2013 Bankr. LEXIS 2012, **25

whose personal services would earn the wages that *§ 1306(a)* captures for the Chapter 13 estate. As the Third Circuit recently observed in *Michael*:

> [N]o provision of the Bankruptcy Code classifies any property, including post-petition wages, as belonging to creditors. . . . When the debtor transfers funds to the Chapter 13 trustee . . . under a confirmed plan . . . the funds become part of the estate, and the debtor retains a vested interest in them. Though creditors have a right to those payments based on the confirmed plan, the debtor does not lose his vested interest until the trustee affirmatively transfers the funds to creditors.

[*41] *In re Michael, 699 F.3d at 312—13. See also Viegelahn v. Harris (In re Harris), Cv. No. SA:12-CV-00540-DAE, 491 B.R. 866, 2013 U.S. Dist. LEXIS 40045, 2013 WL 1189686, *4—*9 (W.D. Tex. Mar. 22, 2013); In re Boggs, 137 B.R. 408, 410 (Bankr. W.D. Wash. 1992)* [**26] ("I cannot conclude that Congress intended legislatively to create trusts for creditors in enacting *§ 1326(a)(2)* and *(c)*; rather, Congress was apparently dealing with the questions of when plan payments are to begin, the disposition of funds in the event no plan is confirmed, and who is to handle the funds.").

*HN19* While *§ 349(b)* does not expressly provide that confirmation of the Chapter 13 plan is vacated by dismissal, courts have reasonably concluded that dismissal has that effect. *See In re Nash, 765 F.2d at 1413* ("The dismissal effectively vacated the first confirmed plan."); *see also In re Parker, 400 B.R. 55 (Bankr. E.D. Pa. 2009)* ("[D]ismissal renders the former debtor no longer obligated to tender play payments, and frees her creditors and the bankruptcy trustee from any compliance with the terms of the confirmed plan.") (citing *In re Parrish, 275 B.R. at 433*); *In re Doyle, 11 B.R. 110, 111 (Bankr. E.D. Pa. 1981)* (once Chapter 13 case is converted to Chapter 7, order confirming Chapter 13 plan is no longer in force). To hold otherwise creates a host of knotty problems that evaporate when *§ 349(b)(3)* is fully respected. Courts requiring distributions pursuant to the plan after dismissal do not explain how courts and trustees are to decide which plan provisions survive dismissal and which do not. Do priorities in the Code still control? What happens to the claims allowance [**28] process? These cases well illustrate that problem. The trustee here cannot know which creditors have allowed claims that would be payable under the confirmed plan until all claims litigation is completed. There may be other claims objections not yet filed. [9] How is the trustee to be compensated for completing the administration of dismissed Chapter 13 cases like these that will require extensive litigation to determine the allowance of mortgage claims? What purpose is served by these efforts in cases that are going nowhere except to archives?

Notice also that *HN21* respecting the vesting of undistributed funds in the debtor at dismissal prevents continued interference with the state law rights of creditors. The distribution scheme worked by a confirmed Chapter 13 plan must follow Bankruptcy Code priorities and protocols—rules that often bear little resemblance to creditors' rights outside of bankruptcy. The legislative history discussed above clearly signals congressional intent that dismissal of a bankruptcy case returns debtors and creditors as much as possible to status quo ante. Vesting undistributed funds at dismissal in the debtor serves this goal by respecting state law. As explained by the Bankruptcy Appellate Panel in *In re Williams*:

> [*42] *HN22* Since, in chapter 13 cases, postpetition earnings are also property of the estate, the funds held by the trustee revest [**30] in the debtor. Thus, *§ 349* seeks to undo the effect of the bankruptcy filing and to place all parties in interest in the same position they were in prior to the bankruptcy filing. If there had been no chapter 13 case, the property and wages would have been retained by the debtor subject to whatever rights the creditors had under state law to satisfy their claims. Thus, upon dismissal of the chapter 13 case, IMC had the same rights

---

65 B.R. 130, 137 (Bankr. N.D. Ga. 1986) ("Mandatory provision" of *§ 1326(a)(2)* "has [**27] the effect of vesting an interest in creditors provided for by a confirmed plan in all payments pursuant to such plan").

[9] *HN20* There is no statute or rule that precisely defines the deadline for claims objections in a Chapter 13 case. *See Morton v. Morton (In re Morton), 298 B.R. 301, 309-10 (B.A.P. 6th Cir. 2003)* ("Neither the Bankruptcy Code nor Bankruptcy Rules contain a bar date or deadline for filing objections to claims in a chapter 13 case and we will not read one into the law where none exists. . . . [T]he bankruptcy court erred in overruling the Debtor's objection to Claim No. 8 on the basis that the objection was filed too late because it was filed post-confirmation.") (citing *Hildebrand v. Hays Imports, Inc. ( In re Johnson), 279 B.R. 218, 224 (Bankr. M.D. Tenn. 2002)*; [**29] *United States v. Kolstad (In re Kolstad), 928 F.2d 171, 174 (5th Cir. 1991)* ("There is no bar date or deadline for filing objections."); *In re Barton, 249 B.R. 561, 566 (Bankr. E.D. Wash. 2000)* ("If Congress had intended objections to claims to be filed prior to Chapter 13 plan confirmation, it would have been a simple matter to write such a deadline into the statute")).

493 B.R. 31, *42; 2013 Bankr. LEXIS 2012, **30

and state law remedies with regard to the property as existed prior to the filing. Since no discharge was granted, IMC may enforce these rights against the debtor personally and in rem. It would be inequitable, however, to permit IMC to enforce its rights by requiring turnover of the funds in the manner requested without requiring adherence to the state law proceedings and protections they would be required to follow in the nonbankruptcy context. Under the Bankruptcy Code, the funds are required to be returned to the debtor, and the debtor may then pay those funds over to his mortgagee. Indeed, the debtor is aware that he is obligated to pay the mortgage or lose his house in a foreclosure action.

*Williams v. IMC Mortg. Co. (In re Williams), 246 B.R. 591, 596-97 (B.A.P. 8th Cir. 1999)* [**31] (per curiam).

## C. POLICY

*HN23* Strong, long-standing policies support returning undisbursed funds to the debtor at dismissal after confirmation. Chapter 13 is an exclusively voluntary bankruptcy option. Chapter 13 is only available to individuals and then only to a subset of individuals with relatively limited amounts of secured and unsecured debts. *See 11 U.S.C. § 109(e)*. Most individuals eligible for Chapter 13 are also eligible for liquidation under Chapter 7. In other words, most Chapter 13 debtors literally volunteer to pay their creditors money they don't have to pay to realize bankruptcy relief. They could file Chapter 7 instead, walk away from all their debts without further payment and keep all future earnings from personal services free of the claims of prepetition creditors. By filing Chapter 13 instead, these individual debtors are voluntarily paying some or all of their dischargeable debt from future earnings that would otherwise be immune to the claims of their creditors. In *§ 349(b)(3)*, Congress chose not to penalize individual debtors who try and fail in a Chapter 13 case.

*HN24* A Chapter 13 debtor may—absent prior conversion—dismiss the case at any time. *11 U.S.C. § 1307(a) & (b)*. [**32] Upon dismissal, the debtor has a reasonable expectation that wage deductions will cease and all earnings that have not been distributed to creditors will be returned to the debtor. Any other outcome would dissuade debtors from filing Chapter 13. The Third Circuit recognized this disincentive in *Michael*:

> [I]f debtors must take the risk that property acquired during the course of an attempt at repayment will have to be liquidated for the benefit of creditors if chapter 13 proves unavailing, the incentive to give chapter 13—which must be voluntary—a try will be greatly diminished. Conversely, when chapter 13 does prove unavailing "no reason of policy suggests itself why the creditors should not be put back in precisely the same position as they would have been had the debtor never sought to repay his debts[.]

*In re Michael, 699 F.3d at 315* (quoting *Bobroff v. Continental Bank (In re Bobroff), 766 F.2d 797, 803 (9th Cir. 1985)* [*43] (quoting *In re Hannan, 24 B.R. 691, 692 (Bankr. E.D.N.Y. 1982)*)) (internal quotations omitted).

*HN25* Returning undistributed funds to the debtor at dismissal parallels the outcome for Chapter 13 debtors who convert to Chapter 7 in good faith under *11 U.S.C. § 348(f)*. *See*, [**33] *e.g.*, *In re Michael, 699 F.3d at 312-16* ("*§ 348(f)*, particularly in light of its legislative history, leads us to conclude that undistributed plan payments held by a Chapter 13 trustee at the time of conversion must be returned to the debtor absent bad faith. This result furthers Congress's preference that on conversion to Chapter 7 a Chapter 13 debtor receive all post-petition property that is held by the Chapter 13 trustee, but still is under the control of the debtor, so that debtors are encouraged to attempt to repay their debts through reorganization rather than liquidation.") (collecting cases). When a debtor chooses to dismiss and deal with creditors in the normal course outside of bankruptcy, no stated congressional policy is served to make it less advantageous for the debtor to dismiss than to convert to Chapter 7. The court in *In re Bailey, 330 B.R. 775 (Bankr. D. Or. 2005)*, expressed similar reasoning in the context of dismissal of an unconfirmed case:

> First, it fosters the policy of encouraging debtors who are financially able to repay their debts to file chapter 13. It ensures that debtors who attempt chapter 13 will not be penalized for an unconfirmed attempt. Returning [**34] the money to the debtor ensures the orderly and efficient disposition of chapter 13 cases. Congress no doubt considered the possibility that creditors would like to participate in the money held by the trustee. By requiring the trustee to return the money to the debtor, Congress ensured that any attempts to reach the money would ensue

493 B.R. 31, *43; 2013 Bankr. LEXIS 2012, **34

outside the jurisdiction of the bankruptcy court. Therefore, unconfirmed cases may be closed as quickly as statutorily possible following dismissal. Holding to the contrary would create a "race to the trustee" and effectively ignore the statutory mandate to return the money to the debtor.

*In re Bailey, 330 B.R. at 777* (quoting *In re Davis, No. 04-30002-DHW, 2004 Bankr. LEXIS 1197, 2004 WL 3310531, at *2 (Bankr. M.D. Ala. June 16, 2004)). See also In re Locascio, 481 B.R. 285, 288-89 (Bankr. S.D.N.Y. 2005).*

*HN26* MACBA submits that failure to pay attorney fees from funds on hand at dismissal will have a chilling effect on counsel's willingness to represent debtors in Chapter 13 cases. There are other, better solutions to this problem. One suggested in the case law is to provide in the Chapter 13 plan how undistributed funds will be distributed in the event of dismissal after confirmation. [**35] [10] Alternatively, counsel will almost always be aware of impending dismissal [*44] of a client's case and can seek payment from any undistributed funds by motion under the "for cause" exception to *§ 349(b)*. [11]

### D. "UNLESS THE COURT, FOR CAUSE, ORDERS OTHERWISE"

*Section 349(b)* prefaces the unwinding of a bankruptcy case at dismissal with the phrase "unless the court, for cause, orders otherwise." At oral argument, the trustee and all amici seemed to agree that any outcome in this case should include an opportunity for parties in interest to grab for a piece of whatever funds are held by the trustee—before dismissal threatens loss of jurisdiction in the bankruptcy court. [12] MACBA points out that administrative claimants are given priority in a [*45] case dismissed prior to confirmation under *§ 1326(b)(2)*, and unpaid attorneys should have an opportunity to argue for

---

[10]   *See, e.g., In re Hufford, 460 B.R. 172, 174 (Bankr. N.D. Ohio 2011)* (The confirmation order provided "'[I]n the event of a conversion to another chapter or dismissal of this case by the Court or by the debtors pursuant to 11 U.S.C. Section 1307, all funds remaining in the hands of the Trustee at the time of dismissal or conversion shall be paid to the Chapter 13 creditors pursuant to the terms of this confirmed plan .. . . [T]he Trustee may cease making payments(s) on any claim that is the subject of an Objection, until such time as the Objection is resolved by a final order.'"). *See also In re Michael, 699 F.3d at 317 n.9 (HN27 "*Creditors may avail themselves of other options to increase the likelihood that they will receive payments made by a debtor under a confirmed plan. (1) If a Chapter 13 trustee is accumulating funds because a creditor is refusing to receive payments under the plan, as here, creditors can move to modify the plan. *See* 11 U.S.C. § 1329(a)(1) ("At any time after confirmation [**36] of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the ... holder of an allowed unsecured claim, to ... increase or reduce the amount of payments on claims of a particular class provided for by the plan."). (2) Creditors can move to compel the trustee to make distributions under the plan immediately after the debtor files its motion to convert. (3) Section 1327(b) provides that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." Creditors can object to a proposed plan that does not provide that plan payments vest in creditors immediately on receipt by the Chapter 13 trustee. They likewise can request that similar language be included in the Bankruptcy Court's order confirming the plan.").

[11]   See discussion below. *See, e.g., In re Lewis, 346 B.R. at 111 (HN28 "*The debtor's counsel, by virtue of the information available to him due to his role in the case, is likely to be in a far better position to recognize when a case is likely to be dismissed than the debtor's creditors and therefore, is also in a far better position to initiate [**37] a request that the court exercise its discretion under § 349(b)(3). Creditors may have no advance notice that a case is likely to be dismissed. Since some of the creditors may have the right to request the allowance of administrative expenses, it is possible that they 'should receive notice that they too could seek payment from funds held by the trustee.' On the other hand, nothing prevents any creditor from seeking the allowance of an administrative expense at any time during the pendency of a chapter 13 case; a creditor need not be aware that a motion to dismiss is pending in order to exercise any rights it may have under 11 U.S.C. § 503(b). In exercising the discretion afforded to the court under § 349(b)(3), I find it more equitable to require that all interested parties be given notice of the potential fund which exists for administrative expenses once the court intervenes to alter the presumptive revesting of estate property. I also consider it to be appropriate for such notice to be provided by the first party invoking the court's power under § 349(b)(3), in this case, J & C. Therefore, I will conduct a final hearing with respect to the Lewis Application after notice to all [**38] parties in interest and direct J & C to provide appropriate notice.") (internal citations omitted).

[12]   *See, e.g., In re Matthews, No. 10-16869-MDC, 2012 Bankr. LEXIS 92, 2012 WL 33213, *2 (Bankr. E.D. Pa. Jan. 6, 2012) (HN29* "As a general rule, a bankruptcy court lacks jurisdiction over proceedings related to a debtor's bankruptcy after the dismissal of a debtor's petition. As with most rules, exceptions exist. Upon dismissal, § 349(b)(3) provides that ownership of estate property shall be vested in the entity that held the property immediately prior to the commencement of the case. The automatic vesting occurs automatically unless, consistent with § 349(b), a bankruptcy court 'for cause, orders otherwise.' By ordering otherwise, a bankruptcy court may therefore retain

493 B.R. 31, *45; 2013 Bankr. LEXIS 2012, **38

similar treatment at dismissal of a confirmed case. [13] Creditors may have statutory or equitable arguments for a share of the undistributed pie. [14] In these cases, substantial funds are undistributed at dismissal due to mortgage claims objections. Who should benefit from this distortion in the normal distribution pattern of a Chapter 13 case: the debtors living in houses with unpaid mortgages? the attorneys who filed the mortgage claims objections? [**39] the mortgagees that haven't been able to produce timely proof of their entitlements in these bankruptcy cases? These notsimple questions demand a predictable protocol for decision.

As the court in *Lewis* recognized, HN31 exercising the discretion afforded under *§ 349(b)(3)* "require[s] that all interested parties be given notice of the potential fund which exists . . . once the court intervenes to alter the presumptive revesting of estate property." *In re Lewis, 346 B.R. at 111*. Defining "all interested parties" may be complicated [**43] in some cases.
15

[*46]  **III. CONCLUSION**

HN32 At dismissal after confirmation of a Chapter 13 plan, *§ 349(b)(3)* controls and undistributed funds held by the trustee must be returned to the debtor. Bankruptcy courts have statutory discretion to order otherwise. To properly exercise that

---

jurisdiction over the administration of a debtor's estate subsequent to the dismissal of a debtor's petition. Therefore, the lynchpin of whether a court retains jurisdiction pursuant to the *§ 349(b)* exception is whether a bankruptcy court issued an order prior to or concurrent with dismissal providing for it to retain jurisdiction over the administration of a debtor's [**40] estate.") (internal citations omitted); *In re Lewis, 346 B.R. at 99-102* (court retains jurisdiction over a debtor's estate to address a pending fee application only if the dismissal provides for an exception to *§ 349(b)(3)*. If, for example, debtor's counsel filed a request for payment of fees prior to the entry of the dismissal order, the court would retain jurisdiction to consider the fee application or request for payment from the nondisbursed funds.). *See also Iannini v. Winnecour, 487 B.R. 434, 441-42 (W.D. Pa. 2012) (HN30 "[A] bankruptcy court has the ability under 11 U.S.C. § 349* to retain jurisdiction over the administration of the estate in its dismissal order, if it finds cause to do so. . . . [W]here the court does not explicitly retain such jurisdiction, the court thereafter presumptively lacks jurisdiction over the issue. . . . Courts are able to invoke ancillary jurisdiction post-dismissal to interpret and effectuate previous decrees. . . . [H]owever, [where] no order of the court has been violated, no disgorgement of fees for wrongful conduct sought, and there was no retention of on-going jurisdiction in the dismissal order. Applying ancillary jurisdiction in this situation [**41] is therefore inappropriate.") (footnotes omitted).

[13] One court described the disparity in treatment of administrative claims as "an anomalous and unfair outcome" that could be addressed "for cause" under *§ 349(b)*. *In re Lampman, 276 B.R. 182, 184 (Bankr. W.D. Tex. 2002)*. *But see In re Lewis, 346 B.R. at 110 n.29* ("In the post-confirmation context, Congress may simply have determined that the benefits of an expeditious completion of case administration outweigh the potential benefits of reserving undistributed plan payments for payment of administrative expenses, which is likely to be only nominal in amount. Thus, I do not consider the distinction odd. In any event, as long as the plain meaning of the provision does not read to an absurd result, the plain meaning is the preferred construction of the statute.").

[14] *See, e.g., In re Darden, 474 B.R. at 12-14* (Settlement proceeds would be distributed to unsecured creditors after dismissal for "cause" under *§ 349(b)*. "The unsecured creditors would find themselves, five years later, back at square one to pursue their remedies under state law. Although the Debtor sees this as fair because those debts will not be discharged, the Bankruptcy Code [**42] should not tolerate such an inequitable result. In exchange for five years of bankruptcy protection, during which time all creditors were stayed from taking collection action against her, the Debtor promised a twenty-percent dividend and the proceeds, if any, from the State Court Action."); *In re Lewis, 346 B.R. 89* (attorney with pending fee application, *11 U.S.C. §§ 330 & 503(b)*, at time of dismissal); *In re Witte, 279 B.R. 585 (Bankr. E.D. Cal. 2002)* (Distribution of sale proceeds held at dismissal would follow terms of sale order and be turned over to lien holder despite objections of debtor and post dismissal levying creditor); *In re Oliver, 222 B.R. 272, 274 (Bankr. E.D. Va.1998)* (allowed attorney fees given preference over garnishing creditor); *In re DeLuca, 142 B.R. 687, 691 (Bankr. D.N.J. 1992)* (attorney compensation at dismissal).

[15] *See, e.g., In re Halabu, No. 11-59449, 2012 Bankr. LEXIS 5069, 2012 WL 5306128, *5—*6 (Bankr. E.D. Mich. Oct. 26, 2012)* (BAPCPA amendments do not require governmental units to file requests for payment to be allowed administrative expenses for taxes incurred by the estate under *11 U.S.C. § 503(b)(1)(B)(i)* and *(b)(1)(D)*. "[T]hat no taxing authority . . . [files] such a request . . . does not necessarily mean that no such administrative expense can be allowed. . . . This creates procedural questions for the Chapter 13 Trustee, and for the Court. . . . [H]ow is the Chapter 13 Trustee to know whether such taxing authority actually has such an administrative claim, and if so, what is the amount of such claim, when the Trustee has heard nothing from the taxing authority?"), *supp. op., No. 11-59449, 2013 Bankr. LEXIS 794, 2013 WL 780757 (Bankr. E.D. Mich. Mar 01, 2013)*.

493 B.R. 31, *46; 2013 Bankr. LEXIS 2012, **43

discretion, notice must be given to all parties in interest with opportunity to demonstrate cause [**44] for an outcome other than return of all funds to the debtors.

**ORDER**

For the reasons stated in the memorandum filed contemporaneously, IT IS ORDERED, ADJUDGED and DECREED that all undistributed funds held by the trustee must be returned to the debtors after notice and opportunity for parties in interest to ask the court to order otherwise.

IT IS SO ORDERED.

/s/ Keith M. Lundin

**Keith M. Lundin**

**U.S. Bankruptcy Judge**