UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TENNESSEE
_____

In Re:  JOSEPH W. REEVES,                    Case No. 09-21716 E

         Debtor                              Chapter 13
_____

TRUSTEE'S RESPONSE TO CREDITOR'S AND DEBTOR'S BRIEF/MEMORANDUM OF LAW
_____

Comes now Sylvia Ford Brown, in her official capacity as Chapter 13 Trustee by and through her attorney of record, Melanie Dakin, and hereby files this brief in support of the creditor's brief and motion to withdraw unclaimed funds, and in opposition to the debtor's memorandum of law and pro se motion for payment of unclaimed funds. The Chapter 13 Trustee incorporates all documents filed in this case and entered on the Court's docket into this brief and requests the Court take judicial notice of these documents.  The Trustee respectfully requests an order granting creditor's application for payment of unclaimed funds in the amount of $10,132.74.

STATEMENT OF FACTS

Joseph W. Reeves ("Debtor") filed a bankruptcy petition under Chapter 13 of the bankruptcy code on February 16, 2009. Dkt. No. 1. Debtor included in his Schedule F (unsecured) Lora E. May ("Creditor") for $54,544.73 for promissory notes dated 4/1/2008 through 11/9/2008. Dkt. No. 1.  The schedule listed the Creditor's address as "211 Ridgeview Meadows Drive, Johnson City, TN  37615". Dkt. No. 1.

On April 6, 2009, the Creditor filed proof of claim number five

1

for $54,544.73, and listed her address on the claim as "211 Ridgeview Meadows Dr., Gray, TN  37615".

On August 20, 2009, the Debtor's chapter 13 plan was confirmed. The confirmed plan required the Debtor to pay the Trustee $832.00 semi-monthly via payroll deductions. Dkt. No. 47. The order of confirmation provided that "the debtor(s)' future earnings shall remain under the exclusive control of the Court. In the event of dismissal, or conversion, funds held by the Trustee shall be paid to creditors unless otherwise ordered by the court."  Dkt. No. 47.  The Creditor's claim was included in the class of generally unsecured creditors on the confirmation order.

On September 4, 2009, an amended order confirming plan was entered. Dkt. No. 52.

On October 16, 2009, an administrative order allowing claims, which included the Creditor's generally unsecured claim, was entered. Dkt. No. 58. This order provided that "the absence of a timely written objection will be deemed approval by the debtor(s) of the claims as recited above and the claims shall be allowed for the purpose of distribution pursuant to the confirmed plan and other orders of this Court".  Dkt. No. 58.

On March 10, 2010, an order was entered that provided that unsecured creditors were to be paid 19% of their claims. Dkt. No. 72.

In October 2011, the Trustee began disbursements to the generally unsecured creditors, including the Creditor.  On October 10, 2011, a check was issued to the Creditor at her address listed on her proof of claim in Grey, TN, in the amount of $355.47 for the October 2011

2

disbursement.  Subsequent to mailing this check, the Trustee received a notice from the US Postal Service indicating that the Creditor's new address was "32 New Halifax St., Jonesborough, TN  37659." The Postal Service returned the check for $355.47 that was mailed to Gray, TN, to the Trustee on October 27, 2011, and on that date, notations were made on the returned check to "re-issue to current address" and "11/2/11 Address change entered".  On November 3, 2011, the check was reissued for $355.47, and sent to the Creditor at "32 New Halifax St., Jonesborough, TN  37659".  The reissued check for $355.47 was returned by the US Postal Service to the Trustee's office on November 16, 2011.

On November 10, 2011, a check was issued in the amount of $263.31, and sent to the Creditor at the Jonesborough, TN address for the November 2011 disbursement.  On November 30, 2011, this check was returned to the Trustee's office.  The Trustee has a copy of the envelope which was returned by the US Postal Service with a sticker indicating "RETURN TO SENDER, NOT DELIVERABLE AS ADDRESSED, UNABLE TO FORWARD".

According to the Trustee's records, the disbursements to the Creditor were put "on reserve" on December 8, 2011.  On December 9, 2011, the December disbursement calculations were run, and a check was generated to the Creditor for $56.68, and dated December 10, 2011.  The check was pulled on December 9, 2011, voided, and never mailed to the creditor due to the "reserve status".

According to the Trustee's records, on January 13, 2012, a Trustee staff member called the Debtor's attorney to inquire about the Creditor's address.  Trustee records show that the Debtor's attorney

3

"advised Mr. Reeves doesn't know how to contact" and that "debtor has no way to contact Ms. May".  On January 17, 2012, the October 2011 check of $355.47 and the November 2011 disbursement check of $263.31 that had been mailed but returned were notated as "void".  The Trustee kept those funds, the December 2011 disbursement funds of $56.68, and all subsequent monthly disbursement funds to the Creditor "on reserve".

On June 11, 2014, the Debtor entered an order of voluntary case dismissal without prejudice. Dkt. No. 122.  At the time of dismissal, the Trustee was holding funds on reserve for the Creditor in the amount of $10,132.74. On June 26, 2014, as directed by the order of confirmation, the Trustee paid the funds held at the time of the voluntary dismissal to the creditors.  A check in the amount of $10,132.74, was made payable to Ms. May.  This check represented funds which had been accumulated for the Creditor and held on reserve for the Creditor, pending receipt of a current mailing address for her.  As per Trustee policy regarding creditors whose mailing addresses were considered invalid, the check for Ms. May was issued for $10,132.74, was marked "void", not mailed, and was held for four months at the Trustee's office.  After four months, the check was considered "stale", and on October 30, 2014, the check was reissued for $10,132.74 to the Clerk of the Bankruptcy Court as "unclaimed funds".

On December 3, 2014, a Motion to Withdraw Unclaimed Funds was filed on behalf of the Creditor c/o Dilks & Knopik, LLC. Dkt. No. 126. Also on that same day, the Trustee's final accounting and report was

filed, which showed that $10,132.74 as the amount of "principal paid" to unsecured Creditor Lora E. May.  Dkt. No. 127.

On December 4, 2014, a Pro Se Motion for Payment of Unclaimed Funds in the Amount of $10,132.74 was filed by the Debtor, Joseph W. Reeves. Dkt. No. 129.  In an "aff[i]davit of Joseph Winfred Reeves" attached to the motion, the Debtor stated that the check in the amount of $10,132.74 that was issued to the Creditor "remained outstanding and the time allowed to negotiate said check has expired and the funds have not been claimed.  The funds were withheld from the Debtor's wages and forwarded to the Chapter 13 Trustee.  Since the funds remain unclaimed, Debtor desires that said funds be refunded directly to him."  Dkt. No. 129.  Also attached to the motion was a copy of the Application and Order entered with the Court on October 30, 2014, (Case no. 99-99992, Dkt. No. 261) in which the Trustee stated that a payment of $10,132.74 had been paid to Lora E. May and not claimed, that the case had been closed, and that the Trustee believed that the funds should be turned over to the Bankruptcy Court Clerk pursuant to 11 U.S.C. Section 347(a).  Dkt. No. 129-1.

On December 7, 2014, an order approving the Chapter 13 Trustee's Final Report and Account, and Discharging the Chapter 13 Trustee was filed. Dkt. No. 132.

At a hearing on the Debtor's and the Creditor's applications on January 8, 2015, the Court heard from counsel for the parties and directed that briefs in support of their respective positions were to be filed by February 19, 2015.  The Trustee's response to the briefs was due by March 5, 2015.

5

ISSUE PRESENTED

Does the Creditor or the Debtor get unclaimed funds which the Chapter 13 Trustee had been holding for this particular Creditor at time of dismissal of the confirmed case?

LEGAL ANALYSIS

11 USC § 1326(c) provides the direction that "Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan."  When a case is dismissed, 11 USC § 349(b)(3) states that the effect of dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title".  Regarding unclaimed property, 11 USC § 347(a) provides that "Ninety days after the final distribution under section 726, 1226, or 1326 of this title in a case under chapter 7, 12, or 13 of this title, as the case may be, the trustee shall stop payment on any check remaining unpaid, and any remaining property of the estate shall be paid into the court and disposed of under chapter 129 of title 28."

Are funds held for a particular creditor at the time of dismissal of a confirmed case "property of the estate" that should revest in the debtor under § 349(b)(3)?  Filing of a case creates a bankruptcy estate.  11 USC § 541(a).  The estate is composed of "all legal or equitable interest of the debtor in property as of the commencement of the case", and "any interest in property that the estate acquires after the commencement of the case".  11 USC § 541(a)(1),(7).  In chapter 13, property of the estate includes "in addition to the

6

property specified in section 541 of this title – (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 2 of this title, whichever occurs first" 11 USC § 1306(a)(1).  This section goes on to include "earnings from services performed by the debtor after the commencement of the case, but before the case is closed, dismissed, or converted". 11 USC § 1306(a)(2). Presumably, the estate would include post petition earnings of the Debtor received prior to the voluntary dismissal of a case.

    11 USC § 1327(b) states that "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."  This section also goes on to state that "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."  11 USC § 1327(a).

    If, under § 1327(b), the confirmation vests the property of the estate in the debtor, then when do the debtor's postconfirmation payments to the Trustee leave the estate?  In *In re Michael*, 699 F.3d 305, the Third Circuit addressed this issue in the context of a case filed as a chapter 13 but subsequently converted to chapter 7. Although the *Michael* case involves conversion of a chapter 13 case, rather than dismissal, the following excerpt from the opinion of the majority is relevant:

7

> [N]o provision in the Bankruptcy Code classifies any property, including post-petition wages, as belonging to creditors. Rather, property comes into and flows out of the estate. In the context of a Chapter 13 case, §1327(b) vests all property of the Chapter 13 estate in the debtor on confirmation of the plan. Thus when the debtor transfers funds to the Chapter 13 trustee to fulfill its obligations under a confirmed plan (or, as here, wages are assigned directly to the Chapter 13 trustee under a garnishment order), the funds become part of the estate, and the debtor retains a vested interest in them. Though creditors have a right to those payments based on the confirmed plan, the debtor does not lose his vested interest until the trustee affirmatively transfers the funds to creditors. *In re Michael*, 699 F.3d 305, 312-13 (3rd Cir. 2012).

In contrast, the holding of the Fifth Circuit in *In re Harris*, 757 F.3d 468 (5th Cir. 2014) was that undistributed funds held by the Chapter 13 Trustee upon a good faith conversion to chapter 7 should be distributed to the creditors.[1] Of particular interest for the situation at hand was the following excerpt from the opinion of the *Harris* Court:

> "It is true that under §§ 1306(b) and 1327(b), a post-confirmation Chapter 13 debtor generally retains possession of, and a vested interest in, his property, including post-petition wages. However, *Michael II* errs by ignoring the clear exception

---

[1] The Supreme Court granted cert on December 12, 2014, to resolve the circuit split regarding whether funds held by Chapter 13 trustees to pay creditors should be returned to debtors who convert their cases to chapter 7 in good faith.

8

to this general rule: "except as otherwise provided in the plan or the order confirming the plan."  If the plan requires the debtor to make payments to the trustee that will be distributed to creditors, the debtor certainly does not retain possession of these payments.  Likewise, it would seem that the confirmation order specifically divests the debtor of any interest he may have in the payments made to the trustee.  In the words of one bankruptcy court:

> When confirmed, the plan governs the relations of the parties and the debtor is bound to make the specified payments provided in the confirmed plan.  These payments are specifically earmarked and set aside for distribution to creditors provided for by the confirmed plan.  To the extent that the confirmed plan provides for payment from debtor's future earnings and the debtor actually makes payment to the trustee pursuant to that plan, the debtor is not entitled to possession, nor is the debtor vested with title to such payments.  Sections 1306(b) and 1327(b) specifically except such payments from their provisions since the debtor's right of possession and vesting of title is limited to all sums and property not otherwise provided for in the confirmed plan or confirmation order.  These exceptions to possession and vesting of title in debtor indicate that debtor is to have no continuing interest in payments actually made pursuant to a confirmed plan." [In re] *Lennon*, 65 B.R. [130], 136 (Bankr. N.D.Ga. 1986).

*In re Harris*, 757 F.3d 468, 477-78.

Critical to determining the situation at hand is to consider that the order of confirmation in this case changed the timing of the vesting event.  The confirmation order in this case provides that "All property shall remain property of the Chapter 13 estate under §§541(a) and 1306(a) and shall revest in the debtor(s) only upon discharge pursuant to §1328(a), dismissal of the case, or specific order of the Court."  Dkt. No. 47.  Thus, during the pendency of the case, the Debtor did not have a "vested interest" in the funds which were received prior to the order of voluntary dismissal and that were being held for a the Creditor due to an issue with a mailing address.

Furthermore, the confirmation order in this case provides that "the debtor(s)' future earnings shall remain under the exclusive control of this Court.  In the event of dismissal, or conversion, funds held by the Trustee shall be paid to creditors unless otherwise ordered by the court."  Dkt. No. 47.  Exclusive control by this Court of the future earnings would, by definition, prevent the Debtor from claiming an interest in funds which were accumulated for the benefit of the Creditor under the confirmed plan ordered by this Court.

Additionally, fatal to the Debtor's argument is the provision of the confirmation order that directs the Trustee to pay funds held at time of dismissal or conversion, to creditors, unless otherwise ordered by the court.  In fact, the Court is familiar with the long standing practice in the Offices of the Chapter 13 Trustees in Memphis, TN, that upon dismissal of a confirmed chapter 13 case, the Trustee will disburse all monies received prior to the dismissal to

creditors in conformance with the confirmed plan.  This procedure has been incorporated in a provision of this Office's standard Chapter 13 confirmation order for years.  The Bankruptcy Court's order confirming the plan is a final judgment.  See *In re Espinosa*, 559 U.S. 260, (2010), see also, *In re Hufford*, 460 B.R. 172, 176 (Bankr. N.D. Ohio 2011) (This Order is considered a final judgment, binding the Debtors to its terms.  11 U.S.C. § 1327(a)).

In the case at hand, when the Debtor voluntarily dismissed his case and the Trustee generated the final check to Ms. May, there were no orders of the Court telling the Trustee to pay the Debtor these funds.  In fact, there was an unequivocal statement in the confirmation order directing the Trustee to pay the funds on hand at time of dismissal to the creditors.

The Debtor relies on *In re Hamilton*, 493 B.R.31 (Bankr. M.D. Tenn. 2013) for the holding that upon dismissal, the Trustee was relieved of his duty to disburse funds according to the confirmed plan.  However, even the *Hamilton* Court expressly stated that one solution to allay concerns of the Middle Tennessee Association of Consumer Bankruptcy Attorneys (MACBA) regarding the potential failure to pay attorney fees from funds on hand at time of dismissal, was "to provide in the Chapter 13 plan how undistributed funds will be distributed in the event of dismissal after confirmation." *Hamilton*, 493 B.R. 31, at 44.  The *Hamilton* Court noted that case law supported this solution, citing *In re Hufford*, 460 B.R. 172, 174 (Bankr.N.D. Ohio 2011) in a footnote:  (The confirmation order provided "[I]n the event of a conversion to another chapter or dismissal of this case by

11

the Court or by the debtors pursuant to 11 U.S.C. Section 1307, all funds remaining in the hands of the Trustee at the time of dismissal or conversion shall be paid to the Chapter 13 creditors pursuant to the terms of this confirmed plan) *Hamilton*, 493 B.R. 31, 43 FN 10.

From an equitable viewpoint, the Creditor has a better claim to the funds in dispute than the Debtor. The Debtor voluntarily filed his chapter 13 case with the expectation that funds withheld by his employer from his paycheck and sent to the Trustee would be paid to his creditors as directed by the order confirming his plan. In *Ransom v. FIA Card Servs*. the Supreme Court noted the Congressional intent behind BAPCPA was to correct the appearance of consumer bankruptcy abuse, and for debtors to repay creditors the maximum they can afford – "to help ensure that debtors who can pay creditors do pay them." *Ransom v. FIA Card Services*, N.A., 131 S.CT. 716, 721, 725 (2011).

Indeed, the dissent in the *Michael* decision feared that "if the undistributed funds revert to [the debtor], instead of being distributed to creditors in accordance with the plan's terms, [the debtor] would receive a windfall." See *Michael*, 699 F.3d at 320 (Roth, J., dissenting). The Fifth Circuit in *Harris* quoted the Third Circuit dissent in *Michael* stating that "the debtor makes payments in order to fulfill his obligations under the reorganization plan and in exchange for the benefits he derives from the plan." *In re Harris*, 757 F.3d at 480, citing *In re Michael*, 699 F.3d at 320.

In the case at hand, the Debtor voluntarily filed a chapter 13 petition, scheduled Ms. May as an unsecured creditor, did not object to her proof of claim, did not object to the language in the order of

12

confirmation directing the Trustee to pay any funds on hand at time of dismissal to creditors, did not object to the administrative order allowing the Creditor's claim, and only raised an issue as to the funds in controversy after voluntarily dismissing his case, and only after Ms. May filed an application for the funds.  The Debtor received the benefit and protection of the bankruptcy court during the pendency of his case, but now post-dismissal wants to subvert the order of confirmation as to one of his creditors and receive funds which were clearly ear-marked for a creditor which he had scheduled.

Ms. May was also bound by the order of confirmation, and as the *Michael* court observed, several courts "emphasize that a confirmed plan binds creditors to a new relationship with a debtor, one that requires creditors to forgo certain rights in exchange for the debtor's promise to make payments under the plan."  See *In re Michael*, 699 F.3d 305, 311 (3rd Cir 2012). See also, *In re Burns*, 90 B.R. 301, 304 (Bankr.S.D.Ohio 1988) ("[A]Chapter 13 Plan represents a legislatively sanctioned, and judicially approved[,] new series of rights and responsibilities among the debtor and the debtor's creditors", as cited by *Michael* at 311.

In the alternative, the Debtor argues that the Creditor "forfeited her claim when she failed to notify the Court of her change of address until after the case dismissed."  Ms. May is an individual who made personal loans to the Debtor, rather than a large, national corporation represented by counsel who are savvy to the bankruptcy system.  But for an unsophisticated creditor's failure to maintain her current address records with the Court, Ms. May would have received

13

timely payments from the Trustee as required by the order confirming the Debtor's plan. Equity demands that Ms. May receive the funds in controversy.

Finally, the Debtor argues that the Creditor's right to recover unclaimed funds, if any, is limited to the funds disbursed to that Creditor prior to dismissal of the case. As stated earlier, the order of confirmation did not revest property of the estate in the Debtor and directed the Trustee to disburse the funds on hand to the creditors upon dismissal. The Chapter 13 Trustee Sylvia Ford Brown disburses funds once a month to creditors associated with approximately 8,100 active Chapter 13 cases. Practically speaking, the decision to place the funds due to the Creditor on "reserve" rather than mailing them every month to an address known to be incorrect was an administrative policy intended to increase efficiency, reduce costs, and reduce the possibility of disbursement checks getting lost in the mail due to incorrect mailing addresses. Due to the high case volume in this district, it would be administratively inefficient and potentially costly to continue to mail monthly disbursement checks to creditors when the checks will surely be returned a few weeks later by the Postal Service as "undeliverable". It is more cost effective, efficient and safer to place the funds on "reserve" in hopes that that the Trustee will eventually be notified of a good mailing address for the creditor. Ultimately, that cost savings and efficiency could play a part in keeping the Chapter 13 Trustee's percentage fee at a lower amount.

CONCLUSION

The Trustee seeks an order granting the Creditor's motion to withdraw unclaimed funds by the Bankruptcy Court clerk in the above captioned Chapter 13 Case and requests that the Debtor's pro se motion for payment of unclaimed funds be denied.

Respectfully submitted,

/s/Melanie Dakin
For:  Sylvia Ford Brown
Chapter 13 Trustee
200 Jefferson, Suite 1113
Memphis, TN  38103

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing has been served by hand-delivery, U.S. Mail or electronic means on the following on this 4rd day of March, 2015.

Joseph W. Reeves, Debtor

Lynda F. Teems, Debtor's Attorney

Lora E. May, Creditor

Holly Schumpert, Attorney for the Creditor

Samuel K. Crocker, United States Trustee

/s/Melanie Dakin
Melanie Dakin