UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION
_____

In re: Joseph W. Reeves                                          Case No. 09-21716-E
Debtor(s)                                                                  Chapter 13
_____

REPLY BRIEF OF CREDITOR AND OPPOSITION TO DEBTOR'S MEMORANDUM
OF LAW IN SUPPORT OF PRO SE MOTION FOR PAYMENT OF UNCLAIMED FUNDS
_____

COMES NOW, Creditor Lora E. May, hereinafter "Ms. May", by and through counsel, moves this Court to direct the Clerk of Court to remit $10,132.74, which was deposited into the Treasury of the United States as unclaimed funds for Ms. May. In support thereof, Ms. May replies in opposition to Debtor's Memorandum of Law In Support Of Debtor's Pro Se Motion For Payment Of Unclaimed Funds and states:

By virtue of 28 U.S.C. §§157(b)(2)(A) and 1334(b), this is a core proceeding. Debtor presents three issues:

I. Whether funds held by the trustee at dismissal of a confirmed chapter 13 case should be disbursed to creditors or refunded to debtor?

II. Whether creditor forfeited her claim when she failed to notify the court of her change of address until after the case dismissed?

III. Whether creditor's right to recover unclaimed funds, if any, is limited to the amount disbursed to creditor prior to dismissal of the case?

I.

First, Debtor asserts that upon dismissal, the funds he voluntarily paid to the Chapter 13 Trustee per his confirmed plan and in the trustee's possession "must be returned to debtor unless the Bankruptcy court exercises its statutory discretion to order otherwise for cause." Debtor

relies heavily, if not solely, on *In Re Hamilton*, 493 B.R. 31, (Bankr. M.D. Tenn 2013). The court in *In re Hamilton* does not support Debtor's position in the instant case. As Debtor's brief correctly stated "in *In re Hamilton*"..."the court reviewed three separate chapter 13 debtor's request for the return of funds on hand at the time their cases dismissed"..."and found that the dismissal of each case relieved the trustee of their duty to disburse funds according to the confirmed plan." (See Debtor's Memorandum of Law in Support of Debtor's Pro Se Motion For Payment Of Unclaimed Funds, Docket 136, pg. 4.) Unlike this case, in which Ms. May has an allowed claim, the creditors in *Hamilton* each had pending claim objections which would have then required the bankruptcy court to resolve the objections in the then dismissed cases. The *Hamilton* court specifically states that "No party in these cases disputes that it was not practicable for the trustee to distribute all funds on hand before these debtors dismissed their chapter 13 cases"..." because there were unresolved claims objections." Further recognizing that "Practicality is a reasonable dividing line in this context."*Id* at 36. In this case, not only does Ms. May have an allowed claim pursuant to 11 U.S.C. §§501 and 502. The Order Confirming Plan, the Administrative Order Allowing Claims, the Application and Order, the Chapter 13 Standing Trustee's Final Report and Account, and the Order Approving Standing Chapter 13 Trustee's Final Report and Account And Discharging Trustee Combined With Notice Of Entry Thereof all became final orders. Mr. Reeves failed to appeal or object to any of these orders, all of which provided the funds to be disbursed to Ms. May.

Mr. Reeves further contends that his Pro Se Motion For Unclaimed Funds is sufficient, or equivalent to objecting to or appealing the Trustee's Final Report And Accounting, Order Approving Final Report and Application and Order, all of which have become final orders. Mr. Reeves ignores the more essential qualifications that provides Ms. May with an allowed claim.

Specifically, that Mr. Reeves listed and scheduled the debt to Ms. May, whom filed a timely proof of claim, that was included in The Administrative Order Allowing Claims. Further, that Mr. Reeves' Confirmation Order specifically provides that "the debtor(s) future earnings shall remain under the exclusive control of the Court. In the event of dismissal, or conversion, funds held by the Trustee shall be paid to creditors unless otherwise ordered by the court." Debtor failed to object to Ms. May's proof of claim, the Confirmation Order or the Administrative Order Allowing Claims, both of which are final orders.

Further, Debtor seems to assert that paragraphs two (2) and three (3) of debtor's Order Confirming Plan are ambiguous or contradictory and is thus "susceptible to two interpretations, it is the duty of the court to adopt that one which renders it more reasonable, effective and conclusive in light of the facts and law of the case"citing Hendrie v. Lowmaster, 152 F.2d 83(6th Cir.1945). Paragraph 2 of Debtor's Confirmation Order explicitly provided that "the debtor(s) future earnings shall remain under the exclusive control of this Court. In the event of dismissal, or conversion, funds held by the Trustee shall be paid to creditors unless otherwise ordered by the court." Paragraph 3 further provides "All property shall remain property of the Chapter 13 estate under §§541(a) and 1306(a) and shall revest in the debtor only upon discharge..., dismissal of the case, or specific order of the court...". Debtor looks to The Hendrie Court that recognized that "The meaning of an ambiguous judgement or order 'must be determined by what preceded it and what it was intended to execute' citing Union Pacific Railroad Co., Mason City &c Railroad Co., 222 U.S. 237, 247, and further "Where a judgment is susceptible of two interpretations, it is the duty of the court to adopt that one which renders it more reasonable, effective and conclusive in the light of the facts and the law of the case" citing Pen-Ken Gas & Oil Corp., v. Warfield Natural Gas Co., 6 Cir, 137 F.2d871, 885. Debtor hopes to create ambiguity where none exists.

The Confirmation Order specifically provided that "the debtor(s) future earnings shall remain under the exclusive control of this Court. In the event of dismissal, or conversion, funds held by the Trustee shall be paid to creditors unless otherwise ordered by the court." Debtor maintains no continuing or vested interest in payments made pursuant to a confirmed plan. The most reasonable interpretation of the law and facts of this case is for the trustee to disburse the funds held on "reserve" for Ms. May to her per Mr. Reeves' confirmed plan as contemplated by all parties, furthering the congressional intent of BAPCPA to correct the appearance of consumer bankruptcy abuse and "to help ensure that debtors who can pay creditors, do pay them." Ransom v. FIA Card Services, N.A., 131 S.Ct. 716, 725 (2011).

Further, 11 U.S.C. §349(b)(3) provides "unless the court, for cause, orders otherwise, a dismissal of a case...revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title;" Debtor relies primarily on 11 U.S.C. §349 to reason that the dismissal of his Chapter 13 case effectively vacated the confirmed plan, that the funds held by the trustee at the time of dismissal were property of the estate, and that the dismissal reinvests property of the estate in the debtor and consequently must be paid to him. Mr. Reeves argument "fails to appreciate the nature of a Chapter 13 plan as an 'exchanged for bargain between debtor and his creditors[.]' and "when the debtor fails to fulfill their end of the bargain because of the dismissal of their case, a result finding that their confirmed Chapter 13 plan is terminated serves to prevent a debtor from obtaining the benefit of those terms in a plan which are advantageous to the debtor" *See In re Hufford*, at 177 citing *In re Sanitate*, 415 B.R. 98 (E.D.Pa. 2009); See also *In re Murphy*, 493 B.R. 576, 581(D. Colorado 2013); *In re Oparaji*, 698 F.3d 231, 238 (2012). "Rather than restoring the parties to their respective positions held on the date of the petition, it would perhaps

be more accurate to state that the intent behind section 349 is to undo the actions of the bankruptcy court to the extent possible, when a debtor's chapter 13 case is dismissed prior to discharge, the court's acceptance of the debtor's bankruptcy plan must be negated and the parties are no longer bound by its term." *See In re Murphy*, 493 B.R. at 581. Judge Learned Hand advises that statutes "should be construed, not as theorems of Euclid, but with some imagination of the purposes which lie behind them." Connecticut National Bank v. Germain, 503 U.S. 249 (1992) at 255, n.1 (citing Lehigh Valley Coal Co./, V. Yensavage, 218 F. 547 553 (CA2 1914), cert. denied, 235 U.S. 705(1915) Mr. Reeves maintains that "the law of the case is 11 U.S.C. §349(b)(3) which revest the property in the Debtor at the time of dismissal." despite, among other things, his Confirmation Order explicitly providing that "the debtor(s) future earnings shall remain under the exclusive control of this Court. In the event of dismissal, or conversion, funds held by the Trustee shall be paid to creditors unless otherwise ordered by the court." In addition to the very specific language in the Confirmation Order providing for payment of funds in the Trustee's possession to be paid to creditors, the Administrative order Allowing Claims, the Application and Order referencing the unclaimed funds at issue in this case and which authorized the turnover of the funds reserved for Ms. May to the Bankruptcy Court Clerk, the Chapter 13 Standing Trustee's Final Report and Account (also referencing the payment of $10,132.74 due and reserved for Ms. May), and the Order Approving Standing Chapter 13 Trustee's Final Report and Account And Discharging Trustee Combined With Notice Of Entry Thereof, all of which are final orders. Lastly, Debtor refers to an Application and Order docketed February 26, 2015, which would not be a final order at the time of this writing, erroneously attributed to creditor's brief. Creditor knows of no such document and makes no statement to same.

Again, Mr. Reeves argument "fails to appreciate the nature of a Chapter 13 plan as an 'exchanged for bargain between debtor and his creditors[.]' and "when the debtor fails to fulfill their end of the bargain because of the dismissal of their case, a result finding that their confirmed Chapter 13 plan is terminated serves to prevent a debtor from obtaining the benefit of those terms in a plan which are advantageous to the debtor." The legislative history of Sec. 349(b) states that "[t]he basic purpose of the subsection is to undo the bankruptcy case, *as far as practicable*, and to restore all property rights to the position in which they were found at the commencement of the case." *Emphasis added*. S.Rep. No. 989, 95th Cong., 2d Sess. 49, reprinted in 1978 U.S. Code Cong. & Ad. News 5787, 5835. *In Re Nash*, 765 F.2d 1410, (9th Cir. 1985).

11 U.S.C. §349(b)(3) provides that "unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title–revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title."  It is well recognized that "cause" under section 349 may arise absent bad faith, based on the specific facts and circumstances of the case. Specifically, based "the duration of time in which the debtor enjoyed the benefit of the automatic stay, it would be inequitable to creditors to authorize dismissal without distribution of monies accumulated during the case for payment to them, the quid pro quo of their suffering the effects of bankruptcy's automatic stay." *Id* at 13., See also *In re Torres*, 2000 WL 1515170 at *2 (Bankr.D.Idaho, Oct, 10, 2000; See *In re Hufford* at 178. In this case, "cause" exists to override the revesting of "property of the estate" in the debtor upon dismissal of his case pursuant to 349(b)(3), where Debtor reaped the benefits of his sixty four (64) month Bankruptcy case, including but not limited to the Automatic Stay Provisions pursuant to 11 U.S.C. §362. Debtor's contention that Creditor's rights are unimpeded

and she has not been prejudiced is inexplicable.

## II.

Secondly, Debtor asserts without authority that creditor forfeited her claim where she knew or should have known of her duty to update her address with the Court and failed to do so. Debtor contends that the harsh result is that the creditor forfeits their claim, despite no pleadings, or other statutory or legal authority to support this position. Debtor further states that the dismissal of his case thereby terminated the trustee's duty to make payments to creditors. Under this same theory, the trustee has no authority to make payment to debtor either. It is unclear, what the trustee would do with unclaimed funds that belong to Debtors where they failed to provide a current address. There is simply no statutory or legal authority to support Debtor's contentions for forfeiture under the circumstances of this case.

## III.

Third, Debtor asserts, again without supporting statutory or other legal authority, that creditor's right to recovery is limited to the funds actually disbursed to her prior to dismissal of the case.

## CONCLUSION

Creditor's Motion For Payment of Unclaimed Funds Should be GRANTED and Debtor's Motion For Unclaimed Funds Should Be DENIED.

Respectfully Submitted,

/s/ Holly W. Schumpert
Holly W. Schumpert #15658
Attorney for Creditor
2552 Poplar Avenue, Suite 4F
Memphis, TN 38112
(901) 323-9000
holleyschumpert@att.net

CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of March, 2015, I caused to be mailed a copy of the foregoing by E-mail, Fax or U.S. Mail, first class, postage pre-paid to:

Linda Teems, Attorney for Debtor

UST

Case Trustee, Sylvia Ford Brown/Melanie Dakin

/s/ Holly W. Schumpert
Holly W. Schumpert #15658